IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ZAKARIA AL-BAIDANY and ABDEL AZIZ AL-SWIDI <br><br> Petitioners, <br><br> v. <br><br> GEORGE W. BUSH, *et al.*, <br><br> Respondents. | Civil Action No. 05-2380 (CKK) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PETITIONERS' MOTION FOR PRELIMINARY INJUNCTION
ENJOINING RESPONDENTS FROM TRANSFERRING PETITIONER
<u>WITHOUT ADVANCE NOTICE</u>**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Local Civil Rule 65.1 of this Court, and the All Writs Act, 28 U.S.C. § 1651, Petitioners Zakaria Al-Baidany and his next friend Abdel Aziz Al-Swidi, both of whom are presently detained at the United States Naval Base, Guantanamo Bay, Cuba ("Guantanamo Bay Naval Base" or "GTMO") as "enemy combatants," respectfully move for an injunction enjoining Respondents George W. Bush, Donald H. Rumsfeld, Jay Hood, and Mike Bumgarner (collectively "Respondents") from transferring Mr. Al-Baidany from GTMO to another country without first providing this Court and undersigned counsel with thirty-days advance written notice of such intended transfer and its terms and conditions. In doing so, Petitioners merely seek the same relief repeatedly provided in other GTMO-related habeas corpus proceedings. *See, e.g., Kurnaz v. Bush,* No. 04-C-1135 (ESH), slip op. (D.D.C. Apr. 12, 2005); *Al-Joudi v. Bush,* No. 05-CV-301 (GK), slip op. (D.D.C. Apr. 4, 2005); *Al-Wazan v. Bush,* No. 05-CV-329 (PLF) (D.D.C. Apr. 1, 2005); *Al-Oshan v. Bush,* No. 05-CV-520 (RMU), slip op. (D.D.C. Mar. 31, 2005); *Abdah v. Bush,* No. 04-CV-1254

(HHK), 2005 LEXIS U.S. Dist. 4249 (D.D.C. Mar. 29, 2005); *see also Awad v. Bush*, No. 05-CV-2379 (JR) (D.D.C. Jan. 11, 2006) (staying GTMO-related habeas corpus proceeding, including any "release, repatriation, or rendition" of detainee).

## STATEMENT OF FACTS

### A.     The Government's Extraordinary Rendition Policy.

The United States Government ("the Government") secretly has transferred detainees held at Guantanamo Bay Naval Base to other countries. The Government frequently has resorted to this practice, known as "rendition," "irregular rendition," or "extraordinary rendition," when a detainee's home country has agreed to imprison the detainee indefinitely upon his transfer back home. *See Abdah v. Bush*, No. 04-1254 (HHK) (RMC), slip op. at 9 (D.D.C. Mar. 12, 2005) (attached as Exhibit "A").

Media reports have disclosed that extraordinary rendition to other countries is often used to facilitate interrogations using techniques barred by this nation as torture. *See, e.g, 60 Minutes: Rendition Revisited* (CBS television broadcast, Dec. 18, 2005) (available at http://www.cbsnews.com) (attached as Exhibit "B"). Respondent Bush disputed these reports during a press conference held on March 16, 2005, claiming that extraordinary rendition is done "with the promise that [transferees] . . . won't be tortured." President's Press Conference (Mar. 16, 2005), *available at* http://www.whitehouse.gov (attached as Exhibit "C" (p. 5)). This claim echoed the Attorney General's assertion during a press briefing on March 8, 2005, that Government policy prohibits renditions "'to countries where we believe or we know that [transferees are] . . . going to be tortured.'" R. Jeffrey Smith, *Gonzales Defends Transfer of Detainees*, Wash. Post, Mar. 8, 2005, at A3 (quoting the Attorney General) (attached as Exhibit "D"). The Director of Central

2

Intelligence ("DCI") made a similar assertion during his testimony before the United States Senate Select Committee on Intelligence on February 16, 2005:

> If that individual is being returned to a nation, a judgment should be made that nothing beyond, I would say, due process punishment, if that is deserved, would happen to that individual, even though they may not have the same standards [of interrogation] in that nation.

*Current and Projected National Security Threats to the United States: Hearing Before the Senate Select Comm. on Intelligence*, 109th Cong. 81 (2005) (attached as Exhibit "E" (excerpt of testimony of DCI Goss)).

Despite these claims and assertions, Government officials have conceded that they are unable to ensure that other countries actually comply with any no-torture promises. During his March 8, 2005, press briefing, the Attorney General admitted that the Government "'can't fully control' what other nations do" and that he did "not know whether countries have always complied with their [no-torture] promises." Smith, *supra,* at A3 (quoting the Attorney General). Similarly, the DCI admitted during his Senate testimony that once the Government renders foreign nationals to their home countries "there's only so much we can do." *Hearing, supra,* at 81.

## B. Treatment Of Detainees Transferred to Yemen.

Mr. Al-Baidany is a citizen of the Republic of Yemen presently detained by Respondents at Guantanamo Bay Naval Base as an "enemy combatant." The United States has cited the Government of Yemen as engaging in torture. The Department of State has reported that

> Security forces [in Yemen] arbitrarily continued to arrest, detain, and torture persons. . . . Despite constitutional constraints . . . police officers routinely monitored citizens' activities, searched their homes, detained citizens for questioning, and mistreated detainees. Prolonged pretrial detention, judicial corruption, and executive interference undermined due process.

\* \* \*

> The [Yemeni] Constitution prohibits [torture]; however, there were reports that members of the . . . police forces tortured and abused persons in detention. There were also reports that authorities used force during interrogations, especially against those arrested for violent crimes.
>
> The Government [of Yemen] acknowledged publicly that torture occurred[.] . . . [T]here were reports the PSO [Yemen's Political Security Organization] increased its use of nonphysical indicator abuse such as sleep deprivation, cold water, and threats of sexual assaults. There were reports that the CID [Yemen's Criminal Investigative Department] routinely used torture in order to obtain confessions.

Dep't of State, *Country Reports on Human Rights Practices - 2004, Yemen* (released Feb. 28, 2005), *available at* http://www.state.gov (attached as Exhibit "F" (pp. 1, 2)).

The Government has transferred detainees from GTMO to Yemen. The media have reported that these detainees have been held in Yemeni prison since their transfer. *See* Jonathan Mahler, *The Bush Administration vs. Salim Hamdan*, N.Y. Times Mag., Jan. 8, 2006, at 86 (attached as Exhibit "G" (p. 9)); *Yemen rights group wants release of ex-Guantanamo detainees*, Agence France Presse, Dec. 14, 2005 (attached as Exhibit "H").

## ARGUMENT

### A.    Petitioners Are Entitled To A Preliminary Injunction.

This Court should enter a preliminary injunction enjoining Respondents from transferring Mr. Al-Baidany from Guantanamo Bay Naval Base to another country absent thirty-days advance written notice to this Court and undersigned counsel. "[T]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88 (1974) (internal quotations omitted). To this end, a preliminary injunction seeks "to preserve the status quo between the parties pending a final

4

determination of the merits of the action." 13 James Wm. Moore, *Moore's Federal Practice* § 65.20 (3d ed. 2004).

A preliminary injunction must issue whenever the moving party demonstrates: (1) a substantial likelihood of success on the merits; (2) that he will suffer irreparable harm absent the relief requested; (3) that other interested parties will not be harmed if the requested relief is granted; and (4) that the public interest supports granting the requested relief. *See Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). This Court must "balance the strengths of the requesting party's arguments in each of the[se] four required areas." *CityFed Fin. Corp. v. OTS*, 58 F.3d 738, 747 (D.C. Cir. 1995). "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Id.*

1. **Petitioners Have A Substantial Likelihood Of Success.**

There is a substantial likelihood of Petitioners obtaining an Order from this Court barring the transfer of Mr. Al-Baidany to another country without judicial involvement in such a transfer. Rule 23(a) of the Federal Rules of Appellate Procedure provides that:

> Pending review of a decision in a habeas corpus proceeding commenced before a court, justice, or judge of the United States for the release of a prisoner, the person having custody of the prisoner must not transfer custody to another unless a transfer is directed in accordance with this rule. When, upon application, a custodian shows the need for a transfer, the court, justice, or judge rendering the decision under review may authorize the transfer and substitute the successor custodian as a party.

As Judge Henry H. Kennedy of this Court has explained, this "Rule was designed to prevent prison officials from impeding a prisoner's attempt to obtain habeas corpus relief by physically removing the prisoner from the territorial jurisdiction of the court in which a habeas petition is pending." *Abdah*, 2005 LEXIS U.S. Dist. 4249, at *5 (internal quotations omitted). While

5

recognizing that "Rule 23(a) is typically not applied in situations involving the transfer of prisoners to the custody of foreign nations," Judge Kennedy has pointed out that:

> [The Rule's] application [in those situations] . . . is consistent with both the test of the rule and its underlying purpose. Indeed, Rule 23(a) acquires even greater importance in the context of Petitioner's case. When a prisoner with a pending habeas petition is simply transferred from one state to another in violation of Rule 23(a), the transfer "does not divest [the court of its] jurisdiction over the action." Here, though, Petitioner['s] transfer to another nation would assuredly deprive the court of its jurisdiction.

*Id.*

This reasoning applies here, where the underlying facts make out a serious risk that Mr. Al-Baidany may be transferred to the custody of a foreign government during the pendency of this habeas proceeding. Accordingly, there is a substantial likelihood of Petitioners "blocking a[ny] transfer [of Mr. Al-Baidany] made absent notice to, and approval from, the court." *Id.*

2.   **The Balance of Harms Manifestly Tips In Favor Of Petitioners.**

The harms Mr. Al-Baidany may suffer absent the preliminary injunction requested here clearly outweigh any inconvenience Respondents may experience should the preliminary injunction issue. Mr. Al-Baidany faces possible torture and denial of due process should he be transferred from Guantanamo Bay Naval Base to another country. Further, transfer to another country would deprive him of the right to challenge the factual and legal bases of his detention in this Court. *See id.* at *13-*14. These circumstances make clear that Mr. Al-Baidany would be irreparably harmed should he be transferred to the custody of another country.

By contrast, Respondents would suffer little, if any, harm should the requested preliminary injunction be granted. As Judge Kennedy has observed:

> While th[is] injunction . . . might restrict or delay Respondents with respect to one aspect of managing Petitioner['s] detention, such a consequence does not outweigh the imminent threat facing

>Petitioner[] with respect to the *entirety* of [his] . . . claims before the court.

*Id.* at *6 (emphasis in original); *see also El-Banna v. Bush*, No. 04-CV-1144 (RWR), slip op. at 5-6 (D.D.C. Apr. 8, 2005) (attached as Exhibit "T") (barring Respondents from transferring detainees without providing thirty-days advance notice of such transfer) ("the condition imposed on [Respondents] . . . is neither heavy nor unexpected" (internal quotations omitted)).

Respondents inevitably will counter that the continued detention of Mr. Al-Baidany when another country is willing to take him into custody results in an untenable situation in which they must hold a detainee whom they want to "release." Yet "it seems beyond question that advocating for release into freedom is not equivalent to advocating for transfer from ongoing detention in one locale to ongoing detention in another." *Abdah*, 2005 LEXIS U.S. Dist. 4249, at *4 n.3.

Respondents also will counter that Mr. Al-Baidany will be transferred to another country only if they receive assurance that he will not be detained without due process or tortured following his transfer. However, as Government officials have acknowledged, *see supra*, pp. 2-3, any such assurance would be unenforceable once Mr. Al-Baidany is out of Respondents' control. Accordingly, the balance of harms weighs decidedly in Petitioners' favor in this case.

### 3. The Public Interest Clearly Supports Providing Advance Notice Of Any Transfer Of Mr. Al-Baidany.

Finally, the public interest strongly favors requiring Respondents to provide advance notice to this Court and undersigned counsel of any intended transfer of Mr. Al-Baidany from Guantanamo Bay Naval Base to another country. It is beyond dispute that the public interest lies "in meticulous compliance with the law by public officials." *Fund for Animals, Inc. v. Espy*, 814 F. Supp. 142, 152 (D.D.C. 1993). Yet any transfer of Mr. Al-Baidany without notice and

7

opportunity to challenge the transfer would seriously harm this interest, as it would be contrary to this nation's obligations under the Geneva Conventions, the International Covenant on Civil and Political Rights, and the Convention Against Torture and Other Cruel and Degrading Treatment and Punishment ("CAT"). In this regard, Congress has provided in implementing CAT that:

> It shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States.

Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242, 122 Stat. 2681-822 (uncodified), *reprinted in* 8 U.S.C.A. § 1231 Historical & Statutory Notes (West 1999) ("United States Policy with Respect to the Voluntary Return of Persons in Danger of Subjection to Torture"). Thus, to ensure the public interest in Respondents adhering to the rule of law, Mr. Al-Baidany should not be transferred without proper notice.

In any event, no matter how much Respondents defend their actions as lawful, and no matter what assurances they purportedly will receive from other countries to treat detainees humanely, the public interest requires that a litigant properly before this Court and represented by counsel be provided with notice of any transfer to another country so that he may, if necessary, contest the transfer on the grounds that he will be placed in the hands of a government that may torture him or detain him without the protections of due process. *See Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (declaring that habeas relief seeks to protect "individuals against erosion of their right to be free from wrongful restraints upon their liaberty [sic]"). Accordingly, the public interest also supports Petitioners' position.

**B.     This Court Alternatively Should Issue An Injunction Pursuant To The All Writs Act.**

Should this Court deem adequate "alternative remedies" unavailable, *Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999), or "the traditional requirements of an injunction" inapplicable, *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1101 n.13 (11th Cir. 2004), it should invoke the All Writs Act ("the Act"), 28 U.S.C. § 1651(a), to provide the injunctive relief Petitioners seek in this case.

The Act vests this Court with the power "to issue injunctions to protect its jurisdiction," *SEC v. Vision Commc'ns, Inc.*, 74 F.2d 287, 291 (D.C. Cir. 1996), and "achieve the ends of justice entrusted to it," *Adams v. United States*, 317 U.S. 269, 273 (1942). *See also Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 54 (D.D.C. 2004) (observing that district courts "may and should take such action as will defeat attempts to wrongfully deprive parties" of their right to sue in a federal forum (internal quotations omitted)). A party seeking an injunction pursuant to the Act must:

> [S]imply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior. The requirements for a traditional injunction do not apply to injunctions under the all Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns.

*Klay*, 376 F.3d at 1100; *see also United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172-73 (1977) (discussing application of All Writs Act without mentioning traditional requirements for injunction).

The circumstances in this case satisfy this standard. This Court possesses jurisdiction to review Petitioners' habeas petition. *See Rasul v. Bush*, 124 S. Ct. 2686 (2004). Transfer of Mr. Al-Baidany to another country would extinguish this jurisdiction. As Judge Ellen S. Huvelle of this Court reasoned when faced with the same scenario:

9

> While the Court has no occasion to decide at this time whether this or any other type of transfer could be subject to an injunction, several examples offered by petitioners raise sufficiently serious concerns to justify the limited remedy of advance notice. For instance, a petitioner could be transferred to the custody of a different United States custodian in a foreign country, such as the United States military base in Afghanistan. Alternatively, he could be transferred to the custody of a foreign government, but held under the direction and control of the United States government. Or, he could be transferred to the custody of a country where he has never had occasion to violate that country's laws, again raising a possible question as to the governmental claim of an "independent law enforcement interest." In such narrowly circumscribed circumstances, closer scrutiny of the transfer might well be appropriate to preserve the petitioner's right to obtain review of the legality of his detention.

*Kurnaz*, slip op. at 4-5 (attached as Exhibit "J").

An injunction also is required to preserve this Court's potential responsibility to determine the lawfulness of any transfer of Mr. Al-Baidany from Guantanamo Bay Naval Base to another country. Several cases involving highly analogous circumstances make clear this need. For example, in *Lindstrom v. Graber*, 203 F.3d 470, 475-76 (7th Cir. 2000), the United States Court of Appeals for the Seventh Circuit held that the Act authorized the lower court to stay the petitioner's extradition pending appeal of the habeas petition challenging the extradition. Similarly, in *Michael v. INS*, 48 F.3d 657, 664 (2d Cir. 1995), the United States Court of Appeals for the Second Circuit held that the Act permitted the lower court to stay an order of deportation pending review of the order's legality. In light of these holdings, this Court should require Respondents to provide notice before they transfer Mr. Al-Baidany to another country, and thereby deprive it of jurisdiction to determine whether it is authorized to determine the transfer's legality, and if so, whether the transfer is legal.

In sum, this Court alternatively should enter an injunction pursuant to the All Writs Act that requires Respondents to provide it and undersigned counsel with thirty-days advance written

notice prior to the transfer of Mr. Al-Baidany from Guantanamo Bay Naval Base to another country in order to protect its jurisdiction and preserve its potential responsibility to determine the lawfulness of any such transfer.

## CONCLUSION

Based upon the foregoing reasons, Petitioner Zakaria Al-Baidany and his next friend Petitioner Abdel Aziz Al-Swidi respectfully request that Respondents be enjoined from transferring Petitioner Al-Baidany from Guantanamo Bay Naval Base to another country without first providing this Court and undersigned counsel with thirty-days advance written notice of such intended transfer and its terms and conditions. Pursuant to Local Civil Rule 65.1(d), undersigned counsel requests an expedited hearing on his request.

Dated: January 18, 2006.

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

_____
Benjamin R. Jacewicz (DCBN 466743)
Washington Harbour
3050 K Street, N.W., Suite 200
Washington, D.C. 20007
(202) 339-8400
(202) 339-8500 (fax)

Counsel for Petitioners