IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ZAKARIA AL-BAIDANY and ABDEL AZIZ AL-SWIDI<br><br>Petitioners,<br><br>v.<br><br>GEORGE W. BUSH, et al.,<br><br>Respondents. | Civil Action No. 05-2380 (CKK) |

**REPLY TO OPPOSITION TO MOTION FOR ENTRY OF PROTECTIVE ORDERS
AND FOR IMMEDIATE AWARD OF A WRIT OF HABEAS CORPUS
OR ISSUANCE OF AN ORDER TO SHOW CAUSE**

Pursuant to Local Civil Rule 7(d), Petitioner Zakaria Al-Baidany and his next friend, Petitioner Abdel Aziz Al-Swidi, file this reply to Respondents' Memorandum in Opposition to Petitioners' Motion for Entry of Protective Orders and for Immediate Award of a Writ of Habeas Corpus or Issuance of an Order to Show Cause ("Opposition").

The Opposition provides virtually no response to the grounds Petitioners identified in their supporting Memorandum of Points and Authorities as warranting the timely filing by Respondents of a return pursuant to 28 U.S.C. § 2243 and entry of the protective orders that have been entered in other habeas corpus cases brought by detainees held at the United States Naval Base, Guantanamo Bay, Cuba ("Guantanamo Bay Naval Base" or "GTMO"). Instead, it advances two jurisdictional arguments undoubtedly designed to continue to deny Petitioners' attorneys access to their clients, who "are being held in a secure facility in an isolated area of the world, . . . to which United States citizens are severely restricted from traveling." *Coalition of Clergy, Lawyers & Professors v. Bush*, 310 F.3d 1153, 1161 (9th Cir. 2002). As explained

below, neither of the Opposition's jurisdictional arguments justifies denial of the relief sought in Petitioners' motion.

I. **Petitioners Are Amenable To A Stay Subject To Conditions That Protect Their Rights.**

A stay is appropriate until the United States Supreme Court and/or United States Court of Appeals for the District of Columbia Circuit resolve the jurisdictional issue arising out of the Detainee Treatment Act of 2005 ("DTA"), Pub. L. No. 109-148, 119 Stat. 2680 (2005) (attached as Exhibit "1"), that is common to this case and cases pending before those courts.[1] While Petitioners strongly disagree with Respondents' assertion that the DTA strips federal courts of jurisdiction to review detainee habeas petitions pending when the DTA became law on December 30, 2005, (Opp'n at 1-2), they recognize that "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," warrants a stay of proceedings here pending resolution of the DTA jurisdictional issue by the higher courts. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (internal quotations omitted). Any such stay, however, should not be "immoderate in extent . . . [or] oppressive in its consequences." *Landis v. N. Am. Co.*, 299 U.S. 248, 255, 256 (1936).

The stay should protect Petitioners' right "to seek emergency assistance when faced with continued detention at the request of the United States but no venue in which to challenge its legality." *Abdah v. Bush*, No. 04-CV-1254 (HHK) (RMC), slip op. at 6-7 (D.D.C. Mar. 12, 2005) (attached as Exhibit "2") (construing stay of proceedings entered in detainee habeas case in response to appeal of other detainee habeas cases involving common merits-related issues). The

---

[1] Respondents have filed a motion to dismiss for lack of jurisdiction based on the DTA in *Hamdan v. Rumsfeld*, a detainee habeas case currently pending before the Supreme Court. *See* Respondents' Mot. to Dismiss for Lack of Jurisdiction, *Hamdan v. Rumsfeld*, No. 05-184 (filed Jan. 12, 2006). The D.C. Circuit has directed the parties to brief the issue of the DTA's effect on its jurisdiction in *Boumedienne v. Bush* and *Al Odah v. Bush*, two detainee habeas cases pending before it. *See Boumedienne v. Bush*, No. 05-5062 (D.C. Cir. Jan. 4, 2006) (Per Curiam Order).

2

right to seek emergency assistance undeniably permits Petitioners to challenge, during the duration of any stay, the contemplated transfer of Mr. Al-Baidany from Guantanamo Bay Naval Base to another country where he may be detained indefinitely and/or subject to torture. *Cf. Awad v. Bush*, No. 05-CV-2379 (JR) (D.D.C. Jan. 11, 2006) (attached as Exhibit "3") (staying proceedings in habeas detainee case pending when DTA became law) (applying to "all proceedings applicable to the petitioner, including without limitation his release, repatriation, or rendition"). In light of this circumstance, Petitioners separately have requested that Respondents be ordered to provide this Court and undersigned counsel with thirty days notice prior to the transfer of Mr. Al-Baidany. They incorporate by reference herein all arguments made elsewhere in support of this request. (*See* Docket Entry 8.)

Nor should any stay excuse Respondents from being required to file a timely return pursuant to 28 U.S.C. § 2243[2] or bar Petitioners' attorneys from having access to Petitioners.[3] Assuming *arguendo* that the Supreme Court and the D.C. Circuit hold that the DTA deprives federal courts of jurisdiction to review previously filed GTMO detainee habeas petitions, undersigned counsel in good faith believes that Petitioners would seek review by the D.C. Circuit of the CSRT's final decision regarding Mr. Al-Baidany's classification as an "enemy combatant," as authorized by the DTA. *See* DTA, Pub. L. No. 109-148, § 1005(e)(2), 119 Stat. 2680 (2005). In that event, Petitioners' attorneys would require access to Petitioners to discuss relevant facts and an opportunity to review the record of Mr. Al-Baidany's CSRT proceeding,

---

[2] As pointed out in Petitioners' previously filed Memorandum of Points and Authorities, Respondents' returns in habeas detainee cases generally consist of the record of proceedings before the Combatant Status Review Tribunal ("CSRT"). (*See also* Opp'n at 13 n.14 (reporting that "[e]ach factual return must be obtained from the Department of Defense").)

[3] Petitioners' attorneys may gain access to their clients at Guantanamo Bay Naval Base through this Court deeming the protective orders entered in *In re Guantanamo Detainee Cases*, No. 02-CV-0299 (JHG) (D.D.C.), applicable to this case. The protective orders require Petitioners' attorneys to obtain security clearances as a precondition to being allowed to travel to GTMO to meet with their clients. Copies of the protective orders are attached to Petitioner's previously filed Memorandum of Points and Authorities as Exhibits "A" through "C."

3

just as they do here. Accordingly, providing Petitioners' attorneys with access to Petitioners and ordering that a timely return be filed impose no undue burden upon Respondents, and indeed would promote "economy of time and effort" in the long run. *Landis*, 299 U.S. at 254.

In sum, Petitioners believe that a stay of proceedings in this case is appropriate until the Supreme Court and/or D.C. Circuit have ruled on whether the DTA applies to detainee habeas cases, such as this one, pending when the DTA took effect, subject to the following conditions:

(1)　Respondents be required to file a timely return;

(2)　The protective orders entered in *In re Guantanamo Bay Detainee Cases* be deemed applicable to this case;

(3)　Petitioners be permitted to seek emergency assistance; and

(4)　Respondents provide both this Court and undersigned counsel with thirty days advance notice prior to any transfer of Mr. Al-Baidany from Guantanamo Bay Naval Base to another country.

A stay subject to these conditions respects this Court's understandable desire to conserve both its own and the parties' resources without being immoderate or oppressive in its consequences.[4]

## II.　There Is No Present Need To Adjudicate Respondents' Challenge To Mr. Al-Swidi's Next Friend Standing.

Petitioners believe the entry of the stay detailed above forecloses any need to determine whether Mr. Al-Swidi has next friend standing at the present time. Yet, as Respondents have briefed their assertion that Mr. Al-Swidi lacks next friend standing, Petitioners feel compelled to respond to this assertion out of "an abundance of caution." (Opp'n at 2.)

The habeas corpus statute authorizes a next friend to file a petition on behalf of the person seeking habeas relief. *See* 28 U.S.C. § 2242. The Supreme Court has held that "at least

---

[4] Of course, so long as this case remains pending, Respondents are under a duty to preserve all evidence in their custody, control, or possession that may lead to the discovery of relevant information.

4

two firmly rooted prerequisites" must be satisfied for someone to act as a next friend for a habeas petitioner:

> First, a "next friend" must provide an adequate explanation – such as inaccessibility, mental incompetence, or other disability – why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the "next friend" must be truly dedicated to the best interest of the person on whose behalf he seeks to litigate, and it has been further suggested that a "next friend" must have some significant relationship with the real party in interest.

*Whitmore v. Ark.*, 495 U.S. 149, 163-64 (1990).

Respondents' assertion that Petitioners are unable to show that Mr. Al-Swidi meets these prerequisites ignores that Respondents themselves have denied Petitioners' attorneys access to their clients. Had Respondents provided such access, the Petition for Writ of Habeas Corpus would include factual allegations that fully address the issue of standing. As Paragraph 6 of the Petition explains:

> Because Petitioner has authorized Mr. Al-Swidi to file this Petition, there is a good faith basis for believing that Petitioner himself is unable to access the United States Courts or obtain assistance in seeking habeas corpus relief from a family member. Undersigned counsel does not know the exact reasons for this inability of Petitioner to bring suit himself because Respondents have held Petitioner and Mr. Al-Swidi virtually *incommunicado* in military custody since their detention and will only permit undersigned counsel to meet with them once this Petition for Writ of Habeas Corpus has been filed and undersigned counsel have acquired the necessary security clearance. Petitioner reserves the right to file an amended petition substituting himself or another individual as petitioner after he and/or Mr. Al-Swidi have met with and discussed this case with undersigned counsel.

(*See also* Decl. of Panayiota G. Souras, Esquire ("Souras Decl.") ¶¶ 4-5 (attached as Exhibit "4").)

5

Paragraph 6 contemplates that, due to the restrictions Respondents have placed on access to Petitioners, Petitioners' attorneys will receive a reasonable opportunity to: (1) conduct an factual investigation to determine the sufficiency of standing; and then (2) file an amended petition that alleges any required additional facts relating to standing. The Supreme Court has indicated support for this approach:

> For purposes of ruling a motion to dismiss for lack of standing, both the trial and reviewing courts must accept as true all material allegations in the complaint, and must construe the complaint in favor of the complaining party. At the same time, it is within the trial court's power to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiffs' standing does not adequately appear from all materials in the record, the complaint must be dismissed.

*Warth v. Seldin*, 422 U.S. 490, 501-02 (1975).

Petitioners' attorneys have launched an aggressive factual investigation since the filing of this case. Undersigned counsel has filed a motion for entry of the protective orders, and three of Petitioners' attorneys have submitted applications for security clearance to the United States Department of Justice. (Souras Decl. ¶ 6.) Upon entry of the protective orders and granting of security clearances, Petitioners' attorneys plan to travel as soon as possible to Guantanamo Bay Naval Base: (1) to meet with Mr. Al-Swidi and discuss, *inter alia*, the nature of his relationship with Mr. Al-Baidany; and assuming Mr. Al-Baidany is accessible to counsel, (2) to meet with him and discuss, *inter alia*, whether he is willing and able to prosecute this case himself. (Souras Decl. ¶ 16.) These discussions with Petitioners should yield the information required to resolve the standing issue here.

Further, Petitioners' attorneys are attempting to locate a member of Mr. Al-Baidany's family who may be able to replace Mr. Al-Swidi as Mr. Al-Baidany's next friend, should that

6

become necessary. They have filed Petitioners' motion requesting that Respondents be ordered to file a timely return in part because the return may include information that will assist in locating family members. (Decl. of J.L. Hunt at 23-24, *Khusruf v. Bush*, No. CV-05-1429 (RMU) (D.D.C. Aug. 23, 2005) (attached as Exhibit "5") (return including letters from detainee's sister).[5]) Petitioners' attorneys also have asked both the Center for Constitutional Rights ("CCR"), the organization coordinating habeas litigation for detainees, and the National Organization for Defending Rights and Freedoms ("HOOD"), a nongovernmental humanitarian relief organization in Yemen, for information regarding Mr. Al-Baidany, including the names of his relatives, sought guidance from a leading academic authority on Yemen about how to acquire information relating to Mr. Al-Baidany, canvassed all other counsel known to CCR to be representing Yemeni detainees for information regarding Mr. Al-Baidany, and reviewed documents purporting to identify individuals detained at GTMO for any reference to "Al-Baidany" or similarly spelled names. (Souras Decl. ¶¶ 10-14.)

Finally, Petitioners' attorneys are seeking to learn more about the relationship between Messrs. Al-Baidany and Al-Swidi. They have asked Allen & Overy LLP ("Allen & Overy"), the law firm representing Mr. Al-Swidi in his own habeas action, for information about Mr. Al-Baidany, and requested that Allen & Overy ask Mr. Al-Swidi about Mr. Al-Baidany when the firm's attorneys meet with him during the week of January 22, 2006. (Souras Decl. ¶¶ 7-8.) Although Allen & Overy has agreed to make this inquiry, any information about Mr. Al-Baidany

---

[5] In this return, the name of the detainee's sister is redacted, presumably because this information is classified. Should Respondents deem classified the identities of relatives named in the return filed in this case, Petitioners' attorneys would seek authorization to disclose the names, as provided by the protective orders, assuming they cannot identify the relatives through independent means. (*See* Petitioners' Mem. of Pts. & Auths. Ex. "A" (Docket Entry 7) (Mem. of Understanding Regarding Access to Classified Nat'l Sec. Information at 1-2, *attached as* Ex. B to Am. Protective Order & Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba.)

that the firm obtains is subject to declassification, which could take approximately one month to complete. (Souras Decl. ¶¶ 8-9.)

These ongoing investigative efforts have yet to uncover information that may resolve the standing issue in this case. (Souras Decl. ¶¶ 7, 10-14.) One of Petitioners' attorneys, however, is currently traveling in Yemen, seeking *inter alia* contact information for relatives of Mr. Al-Baidany. (Souras Decl. ¶ 15.) In any event, Petitioners' attorneys intend to continue seeking information about their clients, and expect eventually to acquire the information required to resolve the standing issue once they meet with Petitioners. (Souras Decl. ¶ 16.)

The only facts that conceivably justify cutting off the ongoing investigation of Petitioners' attorneys and ruling on Respondents' challenge to Mr. Al-Swidi's next friend standing at this juncture are that there is no possibility of: (1) Mr. Al-Swidi meeting the prerequisites for next friend standing, regardless of the investigation's outcome; (2) Mr. Al-Baidany himself taking over prosecution of this case; or (3) a family member replacing Mr. Al-Swidi as next friend.[6] Respondents are unable to establish with any certitude either of the last two situations. The possibility thus exists that their challenge to Mr. Al-Swidi's next friend standing may be mooted by Mr. Al-Baidany deciding to prosecute this case himself or a family member replacing Mr. Al-Swidi as next friend. *See Gherebi v. Bush*, 374 F.3d 727, 729 (9th Cir. 2004) (finding no standing issue where habeas petition initially dismissed because group of journalists, lawyers, professors, and members of the clergy lacked next friend standing was later amended to substitute detainee's brother as next friend); *Hamdan v. Rumsfeld*, 344 F. Supp. 2d 152, 156 (D.D.C. 2004) (considering petition originally filed by petitioner's counsel as next

---

[6] The complaint that this case "presents [Respondents with] the practical difficulty of identifying the detainees for whom habeas relief is sought," (Opp'n at 12), is an inappropriate basis for short-circuiting an ongoing factual investigation by Petitioners' attorneys seeking, *inter alia*, to confirm Petitioners' identities and learn the relationship between the Petitioners.

friend and later amended by consent of the parties and nunc pro tunc to be in petitioner's name only).

Respondents also are unable to establish that there is no possibility of Mr. Al-Swidi meeting the prerequisites for next friend standing. As an initial matter, they fail to refute the Petition's good faith allegation that Mr. Al-Baidany cannot access the United States Courts, for some reason, such as "incapacity . . . or isolation from counsel." *Rosenberg v. United States*, 346 U.S. 273, 291 (1953) (Jackson, J., concurring). The declarations of Frank Sweigart, Deputy Director of the Office for the Administrative Review of the Detention of Enemy Combatants, and First Lieutenant Wade M. Brown, Officer in Charge of the S-2 Section within the Joint Detention Operations Group, submitted in support of Respondents' challenge to standing only make generalized assertions about access to the courts provided detainees at GTMO.[7] In this regard, they nowhere state that Mr. Al-Baidany himself has received a copy of the notice apprising detainees of their right to file a habeas petition or that he has the capacity to file a petition. Similarly, although the declarations were executed many months before Respondents' Opposition was filed,[8] there is no additional evidence in the record establishing that the practices discussed in the declarations still are followed at GTMO.

Respondents likewise fail to point to facts that foreclose the possibility of Mr. Al-Swidi satisfying the "significant relationship" prerequisite for next friend standing. Despite Respondents' suggestion to the contrary, (Opp'n at 10), it is unnecessary for a next friend to be a member of Mr. Al-Baidany's immediate family. *See Lenhard v. Wolff*, 443 U.S. 1306, 1310

---

[7] Respondents' submission of these declarations challenging the habeas petition's allegation that Mr. Al-Baidany lacks access to the United States courts is contrary to *Haase v. Sessions*, 835 F.2d 902, 907 (D.C. Cir. 1987), which bars a defendant from mounting an evidentiary attack at the pleadings stage of the litigation when the complaint alleges facts sufficient to establish standing. For this reason, this Court should not consider the declarations.

[8] The Sweigart declaration was executed on September 5, 2005, while the Brown declaration was executed on March 17, 2005. (2d Decl. of Frank Sweigart at 3; Decl. of 1Lt Wade M. Brown at 3.)

9

(1979) (Rehnquist, Circuit Justice) ("public defender may appear as next friend with as much justification as [applicant's] . . . mother" (internal quotations omitted)); *Hamdi v. Rumsfeld*, 294 F.3d 598, 607 (4th Cir. 2002) (detainee habeas case) ("We are not saying . . . that only the closest relative can serve as next friend.").

Nor can Respondents establish that a detainee never may act as a next friend for another detainee. The mere fact that all detainees face many of the same basic hardships and legal obstacles bars any such blanket exclusion. *See Coalition of Clergy*, 310 F.3d at 1168 (Berzon, C.J., concurring) ("the interests of the various detainees are identical with regard to [common threshold] . . . issues"); *cf. Eisenstadt v. Baird*, 405 U.S. 438, 446 (1972) (holding that case for recognizing third-party standing is strong where third-party is advocate of those whose rights he seeks to assert and impact on third-party interests is significant). Such an exclusion indeed would be counter to the contextual nature of the "significant relationship" concept. As the United States Court of Appeals for the Ninth Circuit has observed:

> [T]he contours of the requisite "significant relationship" do not remain static, but must necessarily adapt to the circumstances facing each individual detainee. "Significance" is a relative concept, dependent on the individual prisoner's plight. Not all detainees may have a relative, friend, or even a diplomatic delegation to act on their behalf. In such an extreme case it is plausible that a person with "some" relationship conveying a modicum of authority or consent, "significant" in comparison to the detainee's other relationships, could serve as the next friend.

*Coalition of Clergy*, 310 F.3d at 1162; *see also Padilla v. Rumsfeld*, 352 F.3d 695, 703-04 (2d Cir. 2003) (finding facts supported lower court's approval of detainee's attorney as detainee's next friend), *rev'd on other grounds*, 542 U.S. 426 (2004).

In sum, this Court should defer ruling on Respondents' challenge to Mr. Al-Swidi's next friend standing to afford Petitioners' attorneys the opportunity to complete their investigation

10

seeking information relevant to standing, and once this investigation is complete, to file an amended habeas petition pleading any additional facts required to establish standing.

## CONCLUSION

For the above-stated reasons and the reasons set forth in their previously filed Memorandum of Points and Authorities, Petitioner Zakaria Al-Baidany, together with his next friend, Petitioner Abdel Aziz Al-Swidi, respectfully requests that this Court: (1) grant Petitioners' Motion for Entry of Protective Order and for Immediate Award of a Writ of Habeas Corpus or Issuance of an Order to Show Cause; (2) stay this proceeding subject to the conditions delineated herein; and (3) defer ruling on Respondents' challenge to Mr. Al-Swidi's next friend standing until Petitioners' attorneys complete their ongoing factual investigation and file an amended habeas petition that pleads any additional facts required to establish standing.

Dated: January 27, 2006.

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

_____
Benjamin R. Jacewicz (DCBN 466743)
Washington Harbour
3050 K Street, N.W., Suite 200
Washington, D.C. 20007
(202) 339-8400
(202) 339-8500 (fax)

Counsel for Petitioners

11