IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ZAKARIA AL-BAIDANY and ABDEL AZIZ AL-SWIDI | ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 05-2380 (CKK) |
| GEORGE W. BUSH, *et al.,* | ) ) ) | |
| Respondents. | ) ) ) | |

**REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION ENJOINING RESPONDENTS FROM TRANSFERRING PETITIONER WITHOUT ADVANCE NOTICE**

Pursuant to Local Civil Rule 7(d), Petitioner Zakaria Al-Baidany and his next friend, Petitioner Abdel Aziz Al-Swidi, file this reply to Respondents' Memorandum in Opposition to Petitioners' Motion for Preliminary Injunctions Requiring Advance Notice of Any Transfer or Release.

**I.    Petitioners Are Amenable To A Stay Subject To Conditions That Protect Their Rights.**

Petitioners are amenable to a stay of the proceedings in this case, so long as any such stay is entered in conjunction with the granting of their pending motion for injunctive relief.  In *Rasul v. Bush*, 542 U.S. 466, 483 (2004), the Supreme Court held that "District Court[s] [possess] jurisdiction to hear" habeas corpus challenges by detainees "to the legality of their detention at Guantanamo Bay Naval Base."  Respondents assert that the Detainee Treatment Act of 2005 ("DTA"), Pub. L. No. 109-148, 119 Stat. 2860 (2005), strips federal courts of jurisdiction to hear detainee habeas cases, such as this one, filed before the DTA became law on December 30, 2005, thus abrogating *Rasul*.  This issue is pending before both the Supreme Court

and the United States Court of Appeals for the District of Columbia Circuit. *See* Respondents'

Mot. to Dismiss for Lack of Jurisdiction, *Hamdan v. Rumsfeld*, No. 05-184 (filed Jan. 12, 2006);

*Boumedienne v. Bush*, No. 05-5062 (D.C. Cir. Jan. 4, 2006) (Per Curiam Order) (directing parties

to brief DTA issue).

      A stay is appropriate here until the Supreme Court and/or D.C. Circuit determine the

impact, if any, of the DTA on cases filed before its enactment, so long as it is subject to certain

conditions that protect Petitioners' rights. One of these conditions should be a requirement that

Respondents provide both this Court and undersigned counsel with thirty-days advance notice

prior to any transfer of Mr. Al-Baidany from Guantanamo Bay Naval Base to another country.[1]

Accordingly, this Court should grant Petitioners' pending motion for injunctive relief without

delay.

## II.    <u>Petitioners Are Entitled To A Preliminary Injunction.</u>

      This Court should enter a preliminary injunction enjoining Respondents from transferring

Mr. Al-Baidany from Guantanamo Bay Naval Base to another country absent thirty-days

advance written notice to this Court and undersigned counsel. A preliminary injunction must

issue when the moving party demonstrates: (1) a substantial likelihood of success on the merits;

(2) that he will suffer irreparable harm absent the relief requested; (3) that other interested parties

will not be harmed if the requested relief is granted; and (4) that the public interest supports

granting the requested relief. *See Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). "These

factors interrelate on a sliding scale and must be balanced against each other." *Serono Labs. v.*

---

[1] In their previously-filed Reply to Opposition to Motion for Entry of Protective Orders and for Immediate Award of a Writ of Habeas Corpus or of an Order to Show Cause, Petitioners requested that any stay entered in this case also be subject to three other conditions: (1) Respondents are required to file a timely return; (2) the protective orders entered in *In re Guantanamo Bay Detainee Cases* are deemed applicable to this case (so that undersigned counsel has access to his clients); and (3) Petitioners are permitted to seek emergency assistance from this Court. Petitioners incorporate by reference herein all arguments made in their previously-filed reply.

*Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998). Accordingly, "[i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are weak." *CityFed Fin. Corp. v. OTS*, 58 F.3d 738, 747 (D.C. Cir. 1995).

Petitioners have set forth facts sufficient to satisfy each of the four factors required for entry of a preliminary injunction in their Memorandum of Points and Authorities in Support of Petitioners' Motion for Preliminary Injunction Enjoining Respondents from Transferring Petitioner Without Advance Notice ("Memorandum"). Respondents now counter that the Government's policies belie Petitioners' assertions that Mr. Al-Baidany faces possible serious harm should he be transferred to the custody of his home country, the Republic of Yemen,[2] and in any event, that the separation of powers doctrine bars this Court from ordering them to provide advance notice of any transfer of Mr. Al-Baidany to another country. As explained below, neither of Respondents' arguments warrant denying Petitioners the relief sought here.

A.    **Petitioners Have A Substantial Likelihood Of Success.**

There is a substantial likelihood that Petitioners will succeed in obtaining an Order barring the transfer of Mr. Al-Baidany from Guantanamo Bay Naval Base to the custody of another country without judicial involvement. In this respect, Respondents are incorrect in asserting that separation of powers concerns "weigh heavily against entry of any preliminary injunction."[3] (Opp'n at 23.)

The United States Constitution separates sovereign power among three coequal branches of Government. *See United States v. Nixon*, 418 U.S. 683, 707 (1974). The Framers of the Constitution considered this separation of powers "essential to the preservation of liberty."

---

[2] Because Respondents represent that they typically transfer detainees to their home countries, Petitioners focus their discussion on Yemen. Petitioners reserve the right to raise arguments concerning other places should Respondents attempt to transfer Mr. Al-Baidany to a country other than Yemen.

[3] This part of Petitioners' argument addresses all of Respondents' contentions concerning separation of powers.

*Mistretta v. United States*, 488 U.S. 361, 380 (1989). Accordingly, they "rejected . . . the notion

that the three Branches must be entirely separate and distinct" in favor of an approach that

"imposes upon the Branches a degree of overlapping responsibility, a duty of interdependence as

well as independence." *Id.* at 380, 381.

The President undeniably "possesses in his own right certain powers conferred by the

Constitution on him as Commander-in-Chief and as the Nation's organ in foreign affairs."

*Chicago & S. Air Lines, Inc. v. Waterman Steamship Corp.*, 333 U.S. 103, 109 (1948). These

presidential powers have led courts sometimes to make "sweeping statements to the effect that

all questions touching foreign relations are political questions" and thus "not subject to judicial

inquiry or decision." *Baker v. Carr*, 369 U.S. 186, 211 & n.31 (1962) (internal quotations

omitted). Courts also have recognized that in many cases it is in the national interest for the

President to be able to articulate the "single-voiced statement of the Government's views." *Id.*;

*see Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 381 (2000).

The Supreme Court nevertheless has cautioned that "it is error to suppose that every case

or controversy which touches foreign relations lies beyond judicial cognizance." *Baker v. Carr*,

369 U.S. 186, 211 (1962). The Court has explained that:

> Our cases in this field seem invariably to show a discriminating
> analysis of the particular question in terms of the history of its
> management by the political branches, of its susceptibility to
> judicial handling in light of its nature and posture in the specific
> case, and of the possible consequences of judicial action.

*Id.*

The transfer of a habeas petitioner, such as Mr. Al-Baidany, to another country implicates

both the power of the President to conduct foreign relations and the power of the federal courts

to hear applications for habeas corpus. As the Supreme Court recently observed, "unless

Congress acts to suspend it, the Great Writ of habeas corpus allows the Judicial Branch to play a necessary role in maintaining th[e] delicate balance of governance [set forth in the Constitution], serving as an important judicial check on the Executive's discretion in the realm of detentions." *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004).

The federal habeas statute fails to address petitioner transfer to the custody of another country. Filling this gap in the statute, including *inter alia* through analogy to other legal authority, is part of the judicial function. *See Rasul*, 542 U.S. at 478; *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993); *Harris v. Nelson*, 394 U.S. 286, 294 (1969).

This Court should reject Respondents' analogy of the rule of non-inquiry to the present context. The rule of non-inquiry generally bars courts from "inquir[ing] into the procedures or treatment which await a surrendered fugitive" in a country requesting his extradition. *Arnbjornsdottir-Mendler v. United States*, 721 F.2d 679, 683 (9th Cir. 1983). It applies when there is an extradition treaty, the existence of which "indicates that, at least in a general sense, the executive and legislative branches consider the treaty partner's justice system sufficiently fair to justify sending accused persons there for trial."[4] *In re Extradition of Howard*, 996 F.2d 1320, 1329 (1st Cir. 1993).

Courts have refused to regard the rule of non-inquiry as an "absolute" prohibition. *United States v. Kin-Hong*, 110 F.3d 103, 112 (1st Cir. 1997). They instead have provided that there may be "situations where the relator, upon extradition, would be subject to procedures or punishment so anitpathetic to a federal court's sense of decency as to require reexamination" of a treaty partner's justice system. *Gallina v. Fraser*, 278 F.2d 77, 79 (2d Cir. 1960); *accord Kin-Hong*, 110 F.3d at 112; *Arnbjornsdottir-Mendler*, 721 F.2d at 683. Accordingly, the rule of non-

---

[4] The United States has no bilateral extradition treaty with the Republic of Yemen. *See* 18 U.S.C.A. § 3181 Historical and Statutory Notes (2005 Supp.) ("Treaties of Extradition").

inquiry does not support finding that any transfer of Mr. Al-Baidany to the custody of another country should be free of judicial inquiry.

The situation addressed by Rule 23(a) of the Federal Rules of Appellate Procedure is most analogous to any transfer of a habeas petitioner, such as Mr. Al-Baidany, to the custody of another country. As Judge Henry H. Kennedy of this Court has explained:

> Respondents' contention that Rule 23(a) is not typically applied in situations involving the transfer of prisoners in the custody of foreign nations, while correct, is of no moment. [The Rule's] . . . application here is consistent with both the text of the rule and its underlying purpose. Indeed, Rule 23(a) acquires an even greater importance in the context of Petitioners' case. When a prisoner with a pending habeas action is simply transferred from one state to another in violation of Rule 23(a), the transfer does not divest [the court of its] jurisdiction over the action. Here, though, Petitioners' transfer to another nation would assuredly deprive the court of its jurisdiction.

*Abdah v. Bush*, No. 04-CV-1254 (HKK), 2005 LEXIS U.S. Dist. 4942, at *5 (D.D.C. Mar. 29, 2005); *see also Kurnaz v. Bush*, No. 04-CV-1135 (ESH), slip op. at 3-4 (D.D.C. Apr. 12, 2005) (recognizing similarity between situations arising under Rule 23(a) and in detainee habeas cases).[5] This Court should adopt Judge Kennedy's reasoning in this case.

Respondents' assertion that there should be no judicial scrutiny of any transfer of Mr. Al-Baidany to the custody of another country manifests Respondents' latest invitation to courts hearing detainee habeas cases "to *condense* power into a single branch of government," in contravention of the separation of powers doctrine. *Hamdi*, 542 U.S. at 536 (emphasis in original). As in other cases, *see, e.g., id.* at 535-37, this invitation should be rejected.

---

[5] A copy of *Kurnaz* is attached to the Memorandum as Exhibit J.

**B.**    **The Balance Of Harms Manifestly Favors Petitioners.**

The balance of harms favors entering the preliminary injunction sought here.  Mr. Al-Baidany would face serious, indeed potentially irreparable, injury should the injunction be denied, while Respondents would suffer no injury should the injunction be granted.

Transferring Mr. Al-Baidany from Guantanamo Bay Naval Base to the custody of another country without notice would deprive him of the right to challenge in this Court the factual and legal bases of his detention.  *See Al-Hela v. Bush*, No. 05-CV-1048 (RMU) (D.D.C. June 3, 2005) (Mem. Order); *Kurnaz*, slip op. at 4; *El-Banna v. Bush*, No. 04-CV-1144 (RWR), slip op. at 4 (D.D.C. Apr. 8, 2005); *Abdah*, 2005 LEXIS 4942, at *4.  Nor would it provide Mr. Al-Baidany with the relief sought in this case – that is, release from unlawful detention.  As Judge Kennedy has observed, "it seems beyond question that advocating release into freedom is not equivalent to advocating for transfer from ongoing detention in one locale to ongoing detention in another."  *Abdah*, 2005 LEXIS 4249, at *4 n.3.

Mr. Al-Baidany also would face possible torture and denial of due process were he transferred to the custody of another country.  In articulating the Government's policy concerning the transfer of GTMO habeas detainees to other countries, the declarations of Matthew C. Waxman, former Deputy Assistant Secretary of Defense, and Pierre-Richard Prosper, former Ambassador-at-Large for War Crimes Issues, fail to address the finding of the United States Department of State that the Government of Yemen engages in torture.  *See* Dep't of State, *Country Reports on Human Rights Practices – 2004, Yemen* (released Feb. 28, 2005).[6] Additionally, neither declaration addresses the admissions of the Attorney General and Director of Central Intelligence that the United States is unable to control the manner in which other

---

[6] This report is attached to the Memorandum as Exhibit F.

countries treat detainees transferred to their custody. *See Current and Projected National Security Threats to the United States: Hearing Before the Senate Select Comm. on Intelligence,* 109th Cong. 81 (2005) (testimony of Director of Central Intelligence Goss); R. Jeffrey Smith, *Gonzales Defends Transfer of Detainees,* Wash. Post, Mar. 8, 2005, at A3 (quoting Attorney General Gonzales).[7] "In short, the threatened [physical] injury [to Mr. Al-Baidany in this case] is not merely remote and speculative, it is a serious potential threat." *Al-Joudi v. Bush,* No. 05-CV-301 (GK), slip op. at 9 (D.D.C. Apr. 4, 2005) (attached as Exhibit B).

By contrast, Respondents would not be injured if they were required to provide advance notice of Mr. Al-Baidany's transfer to the custody of another country. As Judge Gladys Kessler of this Court has observed:

> The Court fails to see any injury whatsoever that the Government would suffer from granting the requested preliminary injunction. Petitioners request only 30 days' notice of transfer – a narrow and discrete request that would impose no burden on the Government. Beyond "vague premonitions" that such relief would harm the executive's ability to conduct foreign policy, there is no concrete evidence that such notice actually will intrude upon executive authority. For example, granting Petitioners' request for 30 days' notice of transfer would not require the Court to second-guess foreign policy decisions of the Executive, would not require the Government to divulge information relating to its negotiations with foreign governments, and would not prevent the Government from speaking with one voice.[8]

*Id.* at 13. Accordingly, Mr. Al-Baidany "face[s] an imminent threat of serious harm, which far outweighs any conceivable burden that [Respondents] . . . might face," thus supporting entry of the preliminary injunction sought here. *Id.* at 15.

---

[7] These materials respectively are attached to the Memorandum as Exhibits D and E.

[8] For additional discussion of Respondents' separation of powers argument, see Section II.A.

**III.     Petitioners Alternatively Are Entitled To An Injunction Under The All Writs Act.**

This Court also may grant the injunctive relief Petitioners seek pursuant to the All Writs Act ("the Act"), which provides:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 161(a).  The Act "is not an independent grant of jurisdiction to a court," but rather empowers "a court to issue writs in aid of jurisdiction acquired to grant some other form of relief."  *Telecommuns. Research & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984); *see also SEC v. Vision Commc'ns, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996) (recognizing that Act authorizes entry of injunctions to protect court's jurisdiction).  Courts have barred litigants from using the Act in cases "[w]here a statute specifically addresses the particular issue at hand."  *Pa. Bur. of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985).

Respondents raise no objection to Petitioners' analysis showing that the facts underlying this habeas case satisfy the standard for obtaining an injunction under the Act.  Nor do they argue that the jurisdiction over this case recognized in *Rasul*, 542 U.S. at 483, should be surrendered before their challenge based on the DTA is adjudicated by the higher courts.[9]  (*See* Opp'n at 1-2.)  Finally, Respondents recognize that no statute addresses the detainee transfer issue arising in this case.  (*See* Opp'n at 22.)

Respondents instead assert that relief under the Act is unavailable because Petitioners also seek a "textbook preliminary injunction." (Opp'n at 10 n. 8 (quotations omitted).)  In doing so, they point to the United States Court of Appeals for the Eleventh Circuit's admonition that "a district court may not evade the traditional requirements of an injunction by purporting to issue

---

[9] For discussion of the DTA, see Section I.

what is, in effect, a preliminary injunction under the All Writs Act." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1101 n.13 (11th Cir. 2004).

Respondents' assertion fails to appreciate the difference between traditional (*e.g.*, preliminary) injunctions and injunctions entered pursuant to the Act. As the Eleventh Circuit has pointed out, "[t]he requirements of a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns." *Id.* at 1100 (citing cases).

The requests for injunctive relief made here reflect the unique concern underlying each type of injunction. The request for a preliminary injunction arises out of concern about preserving the status quo between the parties pending a final determination of the merits of this case. An altogether different concern instigates the alternative request for an injunction under the Act: the risk that Respondents may take unilateral action that deprives this Court of jurisdiction previously acquired over this case.

Nothing bars Petitioners from seeking relief that addresses each of these independent concerns, even if the relief sought with respect to both concerns is the same. Judges of this Court repeatedly have barred detainee transfers from Guantanamo Bay Naval Base without advance notice based not only on their concern that transfer would disrupt the status quo prior to disposition of petitioner claims, but also would strip them of previously-acquired jurisdiction to hear those claims. *See Kurnaz*, slip op. at 3-5; *El-Banna*, slip op. at 4; *Al-Joudi*, slip op. at 6-15 & n.10 (attached as Exhibit B).[10]

In sum, to protect its jurisdiction over this case, this Court alternatively should enter an injunction pursuant to the All Writs Act requiring Respondents to provide thirty-days advance

---

[10] *Kurnaz* and *El-Banna* respectively are attached to the Memorandum as Exhibits I and J.

written notice prior to the transfer of Mr. Al-Baidany from Guantanamo Bay Naval Base to another country.

## CONCLUSION

For the above-stated reasons and the reasons set forth in the previously-filed supporting Memorandum of Points and Authorities, Petitioners Zakaria Al-Baidany and Abdel Aziz Al-Swidi respectfully request that Respondents be enjoined from transferring Mr. Al-Baidany from Guantanamo Bay Naval Base to another country without first providing this Court and undersigned counsel with thirty-days advance written notice of such intended transfer and its terms and conditions.

Dated:  February 9, 2006.

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP


Benjamin R. Jacewicz (DCBN 466743)
Washington Harbour
3050 K Street, N.W., Suite 200
Washington, D.C. 20007
(202) 339-8400
(202) 339-8500 (fax)

Counsel for Petitioners