UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ZAKARIA AL-BAIDANY,<br>Detainee,<br>U.S. Naval Base,<br>Guantanamo Bay, Cuba,<br><br>and<br><br>AHMED MOHAMMED HASSIN<br>AL RAMMAH,<br>Uncle, Yemen,<br>as Next Friend of<br>ZAKARIA AL-BAIDANY<br><br>      Petitioners,<br>v.<br><br>GEORGE W. BUSH,<br>President of the United States of America,<br>The White House,<br>1600 Pennsylvania Avenue, N.W.,<br>Washington, D.C. 20500,<br><br>DONALD H. RUMSFELD,<br>United States Secretary,<br>United States Department of Defense,<br>1000 Defense Pentagon,<br>Washington, D.C. 20301-1000,<br><br>HARRY B. HARRIS, JR.<br>Rear Admiral, U.S. Navy,<br>Commander, Joint Task Force-GTMO,<br>U.S. Naval Base,<br>Guantanamo Bay, Cuba,<br><br>and<br><br>MIKE BUMGARNER,<br>Colonel, U.S. Army<br>Commander, Camp Delta,<br>U.S. Naval Base,<br>Guantanamo Bay, Cuba,<br><br>      Respondents. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **AMENDED PETITION FOR**<br>**WRIT OF HABEAS CORPUS**<br><br><br><br><br>Civil Action No. 05-2380 (CKK) |

## AMENDED PETITION FOR WRIT OF HABEAS CORPUS

1.      Petitioner Zakaria Al-Baidany, also know as Omar Muhammed Ali Al Rammah (ISN 1017) ("Petitioner"), requests that he be granted a Writ of Habeas Corpus pursuant to 28 U.S.C. 2241 *et seq.*: (a) compelling Respondents George W. Bush, Donald H. Rumsfeld, Harry B. Harris, Jr., and Mike Bumgarner (collectively "Respondents") to (i) bring him before this Court for a hearing to determine the lawfulness of his detention and/or (ii) release him from custody; and (b) providing the declaratory and injunctive relief sought herein.

2.      Petitioner here acts through his uncle, Ahmed Mohammed Hassin Al Rammah ("Mr. Al Rammah"), as his next friend.

3.      Undersigned counsel has been unable to meet with Petitioner to discuss relevant facts before filing this Amended Petition for Writ of Habeas Corpus due to restrictions that Respondents have placed upon access to Petitioner. In this regard, Respondents have held Petitioner virtually *incommunicado* in military custody and will only permit undersigned counsel to meet with Petitioner after this Amended Petition has been filed and the Protective Orders have been entered. Due to these circumstances, this Amended Petition's factual allegations specific to Petitioner are based upon information and belief, as permitted by Rule 11(b)(3) of the Federal Rules of Civil Procedure, and where appropriate, should be construed as pleading relevant facts and legal theories in the alternative. Petitioner reserves the right to file a further amended petition after he has met with undersigned counsel, and undersigned counsel has learned the particular facts of Petitioner's case.

4.      Although undersigned counsel presently lacks knowledge regarding many of the facts of Petitioner's case, pursuant to 28 U.S.C. § 2242, Mr. Al Rammah, Petitioner's uncle, has signed an authorization to file this Amended Petition for Writ of Habeas Corpus on Petitioner's behalf.   A copy of this authorization is attached as Exhibit A and incorporated by reference.

## THE PARTIES

5.      Petitioner is  a citizen of the Republic of Yemen presently incarcerated, detained and held in Respondents' custody and control at the United States Naval Base, Guantanamo Bay, Cuba ("Guantanamo Bay Naval Base" or "GTMO") as an "enemy combatant."

6.      Mr. Al Rammah resides in the Republic of Yemen.  Undersigned counsel has spoken with Mr. Al Rammah, and he is familiar with Petitioner and Petitioner's detention at Guantanamo Bay Naval Base.  As Petitioner's next friend, Mr. Al Rammah seeks to assist Petitioner in seeking redress for Petitioner's grievances concerning Petitioner's detention at Guantanamo Bay Naval Base.

7.      Respondent George W. Bush is President of the United States and Commander in Chief of the Armed Forces of the United States.  As explained fully below, Respondent Bush is responsible for Petitioner's detention.

8.      Respondent Donald H. Rumsfeld is Secretary of the United States Department of Defense.  As explained fully below, Respondent Rumsfeld has been charged with maintaining custody and control of Petitioner.

9.      Respondent Harry B. Harris, Jr. is a Rear Admiral in the United States Navy serving as Commander of Joint Task Force ("JTF")–GTMO.  Respondent Harris has supervisory responsibility for Petitioner.

10.      Respondent Mike Bumgarner is a Colonel in the United States Army serving as Commander of the Joint Detention Operations Group and the JTF–GTMO detention camps, including the United States facility where Petitioner is presently held. Respondent Bumgarner is the immediate custodian responsible for Petitioner's detention at Guantanamo Bay Naval Base.

## SCOPE OF RESPONDENTS' LIABILITY

11.      Petitioner sues all Respondents solely in their official capacities.  Unless stated otherwise, all conduct alleged herein, including both acts and failures to act, of Respondents, both individually and jointly, has been and continues to be under color of law.

12.      Each Respondent is responsible for the conduct and statements of his predecessors, acting in their official capacities.

13.      Each Respondent is directly responsible for any activities undertaken by or under the supervision of: (a) any agents or employees of the United States Government ("the Government") acting on his behalf; or (b) any agents or employees of any private contractors (collectively "contractor employees") with whom any agency under Respondent's authority or supervision has contracted for the provision of services at Guantanamo Bay Naval Base.  Accordingly, all references to a particular Respondent's actions in this Amended Petition for Writ of Habeas Corpus include activities performed

by that Respondent's agents or employees, other agents or employees of the Government, and/or contractor employees.

### JURISDICTION AND VENUE

14.     The jurisdiction (*i.e.*, authority) for this Court to hear this Amended Petition for Writ of Habeas Corpus arises under 28 U.S.C. § 2241(a) and (c).

15.     As claims made in this Amended Petition for Writ of Habeas Corpus arise, *inter alia*, under the Constitution, laws, and treaties of the United States, this Court has subject matter jurisdiction over this Amended Petition pursuant to 28 U.S.C. § 1331.

16.     As claims made in this Amended Petition for Writ of Habeas Corpus arise under the Alien Tort Claims Act, this Court also has subject matter jurisdiction over this Amended Petition pursuant to 28 U.S.C. § 1350.

17.     As this case involves an actual controversy falling within this Court's subject matter jurisdiction, this Court has the authority to grant Petitioner declaratory relief pursuant to 28 U.S.C. § 2201 *et seq.*

18.     Respondents are subject to this Court's jurisdiction as they are both individually and jointly responsible for maintaining custody of and control over Petitioner.

19.     This Court is the appropriate forum for Petitioner, a detainee at Guantanamo Bay Naval Base, to seek a Writ of Habeas Corpus.  In this regard, the Guantanamo Bay Naval Base is territory over which the United States Federal Courts exercise exclusive jurisdiction and control.  Additionally, a number of acts committed by Respondents, both jointly and individually, giving rise to the claims asserted herein, including the promulgation of the Presidential Military Order detailed below, the decision

to detain Petitioner at GTMO and any decision to continue detaining Petitioner at GTMO,

took place within this Court's territorial jurisdiction.

## FACTUAL BACKGROUND

**A.    Congressional Joint Resolution.**

20.    In response to the terrorist attacks that took place in New York City,

Washington, D.C., and Pennsylvania on September 11, 2001, the United States launched

a military campaign against the Taliban regime in the Islamic Republic of Afghanistan.

21.    On September 18, 2001, the Congress of the United States passed Senate

Joint Resolution 23 ("the Joint Resolution"), which authorized Respondent Bush, in his

capacity as President and Commander in Chief of the Armed Forces of the United States:

> [T]o use all necessary and appropriate force against those
> nations, organizations, or persons he determines planned,
> authorized, committed, or aided the terrorist attacks that
> occurred on September 11, 2001, or harbored such
> organizations or persons, in order to prevent any future acts
> of international terrorism against the United States by such
> nations, organizations or persons.

**B.    Presidential Military Order.**

22.    On November 13, 2001, Respondent Bush, in his capacity as Commander

in Chief, and/or pursuant to the Joint Resolution, issued a Military Order regarding the

"Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism"

(the "Military Order"), 55 Fed. Reg. 57,833 (2001).  The Military Order was neither

authorized nor approved by Congress.

23.    The Military Order, which remains in effect, authorizes Respondent

Rumsfeld to take "all necessary measures to ensure" that any "individual subject to this

order is detained at an appropriate location designated by the Secretary of Defense

outside or within the United States."

24.    The Military Order defines the term "individual subject to this order" as:

> [A]ny individual who is not a United States citizen with
> respect to whom [Respondent Bush] . . . determine[s] from
> time to time in writing that:
>
> (1) there is reason to believe that such individual, at
> relevant times,
>
> (i) is or was a member of the organization known as al
> Qaida;
>
> (ii) has engaged in, aided or abetted, or conspired to
> commit, acts of international terrorism, or acts in
> preparation therefor, that have caused, threaten to cause, or
> have as their aim to cause, injury to or adverse effects on
> the United States, its citizens, national security, foreign
> policy, or economy; or
>
> (iii) has knowingly harbored one or more individuals
> described in subparagraphs (i) or (ii) of subsection 2(a)(1)
> of this order; and
>
> (2) it is in the interest of the United States that such
> individual be subject to this order.

25.    The Military Order denies any individual detained pursuant to its terms of

the following:

> [The privilege] to seek any remedy or maintain any
> proceeding, directly or indirectly, or to have any such
> remedy or proceeding sought on the individual's behalf, in
> (i) any court of the United States, or any State thereof, (ii)
> any court of any foreign nation, or (iii) any international
> tribunal.

Accordingly, the Military Order deprives a detainee of the right to appear before any

court or other neutral tribunal for a hearing and determination regarding the legality of his

continued detention.

26.     The Military Order does not provide for a detainee to be notified of the charges he may face.  Nor does it provide for a detainee to be notified of his legal rights under domestic and/or international law.  Finally, the Military Order does not provide a detainee with any right to legal counsel, right to notice of consular protection or right to consular access at his request.

27.     Presumably pursuant to the Military Order and/or other purported legal authority, the United States Military began transporting detainees to Guantanamo Bay Naval Base in early 2002.  Detainees are currently housed in two facilities located at GTMO: (a) Camp Delta, a prison; and (b) Camp Five, a maximum security interrogation and detention center.

## C.     Deputy Secretary Of Defense's Order Regarding "Enemy Combatant" Classification.

28.     On July 7, 2004, the Deputy Secretary of Defense, the second highest ranking official in the United States Department of Defense, sent to the Secretary of the United States Navy a memorandum regarding "Order Establishing Combat Status Review Tribunal" (the "Deputy Secretary's Order").

29.     Respondent Rumsfeld authorized the Deputy Secretary's Order.  The Deputy Secretary's Order, however, was neither authorized nor otherwise approved by Congress.

30.     The Deputy Secretary's Order, which remains in effect, "applies only to foreign nationals held as enemy combatants in the control of the Department of Defense at Guantanamo Naval Base, Cuba."

31.     The Deputy Secretary's Order defines the term "enemy combatant" as:

> [A]n individual who was part of or supporting Taliban or al
> Qaeda forces, or associated forces that are engaged in
> hostilities against the United States or its coalition partners.
> This includes any person who has committed a belligerent
> act or has directly supported hostilities in aid of enemy
> armed forces.

32.    The Deputy Secretary's Order claims that "[e]ach detainee subject to this Order has been determined to be an enemy combatant through multiple levels of review by officers of the Department of Defense."

33.    The Deputy Secretary's Order establishes the Combat Status Review Tribunal ("CSRT") to determine whether a detainee should no longer be classified as an "enemy combatant." However, as this Court recognized in *In re Guantanamo Detainee Cases*, 355 F. Supp. 443 (D.D.C. 2005), the procedures of the CSRT are deficient in numerous respects, including: (a) failure to provide any detainee with access to any classified information reviewed by the CSRT in considering whether the "enemy combatant" classification should be removed; (b) failure to permit any detainee to have an advocate review and challenge classified evidence on his behalf; (c) denial of the right to legal representation; (d) personal representatives appointed to assist detainees in CSRT proceedings are neither attorneys nor advocates and thus cannot be considered effective surrogates to compensate for the inability of detainees to personally review and contest classified evidence; (e) personal representatives are required to disclose to the CSRT any relevant inculpatory information obtained from detainees they are assisting; and (f) failure by the CSRT to consider sufficiently whether evidence upon which it has relied in making its determinations was coerced from detainees.

34.    The Deputy Secretary's Order requires that detainees held at Guantanamo Bay Naval Base be informed within ten (10) days of its date of their "right to seek a writ

of habeas corpus in the courts of the United States." It does not bar detainees from challenging their classification as "enemy combatants" through a Petition for Writ of Habeas Corpus filed in this Court either before the CSRT makes a classification determination or after the CSRT makes an adverse classification determination.

35.    A fact sheet issued in connection with the Deputy Secretary's Order explains that the Order was in response to the decision of the United States Supreme Court in *Rasul v. Bush*, 542 U.S. 466, 124 S. Ct. 2686, 159 L. Ed. 2d 548 (2004), "that the federal courts have jurisdiction to hear challenges to the legality of the detention of enemy combatants held at Guantanamo Bay."

36.    It is unclear whether the definition of the term "enemy combatant" provided in the Deputy Secretary's Order applies in all cases. In this regard, the Government has not consistently defined the term "enemy combatant." For example, in *Hamdi v. Rumsfeld*, 542 U.S. 507, 516, 124 S. Ct. 2633, 2639, 159 L. Ed. 2d 578, 591 (2004), it asserted that:

> *[F]or purposes of this case*, the "enemy combatant" it is seeking to detain is an individual who, it alleges, was "part of or supporting forces hostile to the United States or coalition partners" in Afghanistan and who "engaged in an armed conflict against the United States" there.

(Emphasis added.)

## D.    Seizure Of Petitioner.

37.    Petitioner was seized against his will on a date unknown to undersigned counsel subsequent to September 11, 2001. The location where Petitioner was seized is unknown to undersigned counsel. Finally, whether Petitioner was seized by the Armed Forces of the United States, or by some other person or authority, also is unknown to

undersigned counsel. Unlike the undersigned counsel, Respondents know when, where, and by whom Petitioner was seized.

38.    Either at the time of or subsequent being seized, Petitioner was transferred against his will to Guantanamo Bay Naval Base. Unlike undersigned counsel, Respondents know when Petitioner was transferred to GTMO, who detained Petitioner before his transfer to GTMO, the conditions of any detention before transfer to GTMO and whether Petitioner was interrogated before transfer to GTMO, and if so by whom and by what means.

39.    Undersigned counsel's lack of knowledge about these basic facts is the result of restrictions that Respondents have placed upon access to Petitioner. Respondents have held Petitioner virtually *incommunicado* in military custody since his detention and will only permit undersigned counsel to meet with Petitioner after this Amended Petition for Writ of Habeas Corpus has been filed and the Protective Orders have been entered.

40.    Respondents have refused to find Petitioner to be entitled to prisoner of war status and instead have detained him at Guantanamo Bay Naval Base as an "enemy combatant" pursuant to Respondent Bush's authority as Commander in Chief of the Armed Forces of the United States, the laws and usages of war and/or the Military Order.

41.    Petitioner asserts that he is not, nor has he ever been, an individual subject to the Military Order, or an enemy alien (*i.e.*, a person who owes allegiance to a foreign country at war with the United States), lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the Government, including but not limited to

11

the definition of "enemy combatant" set forth in the Deputy Secretary's Order and/or elsewhere.

42.    The Government has never disclosed publicly whether Respondent Bush has determined in writing that Petitioner is an individual subject to the Military Order, as required by the Military Order.

43.    Since being seized, Petitioner has been held virtually *incommunicado*. Petitioner, however, has been able to communicate his authorization to file this Amended Petition for Writ of Habeas Corpus, in which he seeks to raise every available legal challenge to his detention, including but not limited to whether there is a legal or factual basis for Respondents' determination that he is an "enemy combatant," as defined by the Deputy Secretary's Order and/or elsewhere, or an individual subject to the Military Order.

**E.    Detention Of Petitioner.**

44.    Although undersigned counsel does not know the particular conditions of Petitioner's detention by Respondents at Guantanamo Bay Naval Base, there have been numerous media reports providing accounts of detainees' experiences at GTMO.  For example, the media have reported that agents and employees of Respondents have represented to detainees that they are habeas lawyers to induce detainees to disclose information.  The media also have reported that military lawyers appointed to defend detainees in criminal proceedings have been instructed to limit their representation in a manner that violates  due process.  There is no reason to believe that the conditions of Petitioner's detention at GTMO differ from those of other detainees.

45.     Undersigned counsel's lack of knowledge about the conditions of Petitioner's detention at Guantanamo Bay Naval Base is the result of restrictions that Respondents have placed upon access to Petitioner. Respondents have held Petitioner virtually *incommunicado* in military custody since his detention and will only permit undersigned counsel to meet with Petitioner once this Amended Petition for Writ of Habeas Corpus has been filed and the Protective Orders have been entered.

46.     It is widely known, through sources including the media and released detainees, that detainees held at Guantanamo Bay Naval Base as a matter of practice are interrogated repeatedly by employees and agents of the United States Department of Defense, the United States Department of Justice and the Central Intelligence Agency ("CIA"), even though they have never been charged with any offense and has not been notified of any pending or contemplated charges. It is also widely known, through sources including the media and released detainees, that no detainee has been afforded a lawful military or civilian proceeding to challenge the legal and factual basis of his detention. Finally, it is widely known, again through sources including the media and released detainees, that detainees have not been provided with the means to contact or secure counsel to challenge their detention and/or conditions of detention. There is no reason to believe that Petitioner's situation is any different than that of any other detainee.

47.     Respondents have publicly taken the position that detainees being held at Guantanamo Bay Naval Base, such as Petitioner, should not be informed of their rights under: (a) the United States Constitution; (b) regulations of the United States Military; (c) the Geneva Conventions; (d) the International Covenant on Civil and Political Rights; (e)

the American Declaration on the Rights and Duties of Man; (f) the 1954 Convention

Relating to the Status of Refugees; and/or (g) customary international law. Indeed, they

have asserted that detention at GTMO places detainees outside of the protection of the

law.

48.    Respondents have conditioned counsel's access to detainees upon

unreasonable terms, including classification and declassification procedures.

Undersigned counsel expects that Respondents will place the same unreasonable terms

upon him.

49.    Respondents have repeatedly taken the position, including in other habeas

corpus litigation, *see* Tr. of Oral Arg. Re Mot. to Dismiss at 22-24, *filed in In re*

*Guantanamo Detainee Cases*, No. 02-CV-0299 (CKK) (D.D.C.) (available in Clerk's

file) (statement of Deputy Associate Attorney General Brian Boyle), that they may hold

detainees, such as Petitioner, under current conditions indefinitely.

**F.    Treatment Of Petitioner During His Detention.**

50.    Undersigned counsel does not know the particulars of the treatment

afforded to Petitioner during his detention at Guantantamo Bay Naval Base. Undersigned

counsel's lack of knowledge in this respect is the result of restrictions that Respondents

have placed upon access to Petitioner. Respondents have held Petitioner virtually

*incommunicado* in military custody since his detention and will only permit undersigned

counsel to meet with Petitioner after this Amended Petition for Writ of Habeas Corpus

has been filed and the Protective Orders have been entered.

51.    Respondents have publicly taken the position that limitations normally

governing the United States Military's use of coercive techniques under the auspices of

14

the United States Department of Defense do not apply to interrogations of detainees at Guantanamo Bay Naval Base conducted by CIA agents or other specially designated officers assigned to interrogate detainees at GTMO.

52.    Additionally, an Action Memo from the General Counsel for the United States Department of Defense has approved for use in interrogating detainees at Guantanamo Bay Naval Base the following techniques: (a) being kept in isolation for prolonged periods of time; (b) twenty-eight-hour interrogation sessions; (c) forced nudity and other sexual humiliation; (d) hooding; (e) extreme and prolonged stress positions; (f) sleep deprivation; (g) sensory assaults; and (h) the use of dogs to create feelings of anxiety and terror.  Along the same lines, internal memos of the Federal Bureau of Investigation ("FBI") have detailed the use of "highly aggressive interrogation techniques" at GTMO, including twenty-four-hour-plus interrogation sessions involving beatings, temperature extremes, use of dogs and loud music.  It is reasonable to believe that these techniques and others like them have been used to force detainees, including Petitioner, to provide information and/or to make certain confessions, to punish or intimidate detainees, and for other purposes.

53.    International humanitarian organizations have also reported the kinds of activities described above.  For example, in a confidential report to the Government, the International Committee of the Red Cross ("ICRC") has charged the United States Military with intentional use of physical and psychological coercion during interrogations of detainees at Guantanamo Bay Naval Base.

**G.    Extraordinary Rendition.**

54.    The media have reported that detainees have been threatened with "extraordinary rendition" during interrogations at Guantanamo Bay Naval Base. Extraordinary rendition is the practice of secretly transferring detainees to countries that: (a) permit indefinite detention without charge or trial; and/or (b) routinely practice torture.  It bypasses applicable legal requirements for extradition.

55.    The media also have reported that the Government has actually employed extraordinary rendition to transfer detainees, including detainees whose home country is the Republic of Yemen, out of Guantanamo Bay Naval Base.

56.    The media has reported further that the Government intends to transfer additional detainees presently held at Guantanamo Bay Naval Base to their home countries, based on the express condition that transferred detainees are imprisoned by their home countries.

57.    The United States Department of State has reported that the Republic of Yemen has engaged in human rights violations, including the use of torture.  In this regard, the State Department's 2003 *Country Report on Human Rights Practices* for the Republic of Yemen states:

> Despite constitutional constraints, security officers routinely . . . detained citizens for questioning, and mistreated detainees.  Prolonged pretrial detention, judicial corruption, and executive interference undermined due process.
>
> \* \* \*
>
> The Constitution [of Yemen] is ambiguous regarding the prohibition of cruel and inhuman punishment, and members of the security forces tortured and otherwise abused prisoners in detention.

16

While it notes that the Republic of Yemen has attempted to end these abuses, the State Department's *Country Report* identifies a number of obstacles to achieving that objective, including lack of training among police and security officials.

### CAUSES OF ACTION

**A.    Unlawful Seizure And Detention Of Petitioner.**

#### Count I – Facial Challenge To Military Order

58.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

59.    Petitioner is in custody under or by color of the authority of the United States.  Pursuant to the Military Order, Respondent Bush has ordered the prolonged, indefinite and arbitrary detention of Petitioner.  Respondents Rumsfeld, Harris and Bumgarner have implemented the Military Order.

60.    Petitioner's detention is unlawful because the Military Order on its face violates: (a) Article I, Section 8, Clause 11, of the Constitution of the United States (*i.e.*, the War Powers Clause); (b) Article II of the Constitution of the United States; (c) the Fifth Amendment to the Constitution of the United States; (d) the Administrative Procedures Act, 5 U.S.C. § 702; (e) treaties of the United States, including but not limited to the Third and Fourth Geneva Conventions; (f) the Uniform Code of Military Justice; and/or (g) customary international law.

61.    Accordingly, Petitioner is entitled to a Writ of Habeas Corpus, a declaratory judgment holding the Military Order to be unlawful and any other relief that this Court may deem appropriate.

### Count II – As Applied Challenge To Military Order

62.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

63.     Petitioner is in custody under or by color of the authority of the United States.  Pursuant to the Military Order, Respondent Bush has ordered the prolonged, indefinite and arbitrary detention of Petitioner.  Respondents Rumsfeld, Harris and Bumgarner have implemented the Military Order.

64.     Petitioner's detention is unlawful because the Military Order, as applied to Petitioner, violates: (a) Article I, Section 8, Clause 11, of the Constitution of the United States (*i.e.*, the War Powers Clause); (b) Article II of the Constitution of the United States; (c) the Fifth Amendment to the Constitution of the United States; (d) the Administrative Procedures Act, 5 U.S.C. § 702; (e) treaties of the United States, including but not limited to the Third and Fourth Geneva Conventions; (f) the Uniform Code of Military Justice; and/or (g) customary international law.

65.     Accordingly, Petitioner is entitled to a Writ of Habeas Corpus, a declaratory judgment holding the Military Order to be unlawful and any other relief that this Court may deem appropriate.

### Count III – Challenge To "Enemy Combatant" Classification

66.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

67.     Petitioner is in custody under or by color of the authority of the United States.  Respondents have classified Petitioner as an "enemy combatant," as defined by

the Deputy Secretary's Order and/or elsewhere, and have detained and continue to detain Petitioner on the basis of this classification.

68.    Petitioner is not, nor has he ever been, an enemy alien (*i.e.*, a person who owes allegiance to a foreign country at war with the United States), lawful or unlawful belligerent, or combatant of any kind, including but not limited to an "enemy combatant" as defined by the Deputy Secretary's Order and/or elsewhere.

69.    Respondents have exceeded, and continue to exceed, the authority of the Executive under Article II of the Constitution of the United States by authorizing, ordering and directing that the United States Military take custody of and transfer Petitioner to the Guantanamo Bay Naval Base, and by authorizing, ordering and directing that the United States Military detain Petitioner at GTMO as an "enemy combatant."

70.    Accordingly, Petitioner is entitled to a Writ of Habeas Corpus, a declaratory judgment holding Respondents' classification of Petitioner as an "enemy combatant" to be without sufficient legal or factual basis, an Order directing Respondents to release Petitioner and any other relief that this Court may deem appropriate.

### Count IV – Alien Tort Claim: Enforced Disappearance

71.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

72.    Petitioner is in custody under or by color of the authority of the United States. Respondents have taken Petitioner into custody and detained Petitioner against his will and refused to acknowledge publicly the detention of Petitioner. They have taken the position that detainees being held at Guantanamo Bay Naval Base, such as Petitioner,

should not be informed of their rights and asserted that being held in custody at GTMO places detainees, including Petitioner, outside of the protection of the law.

73.    Respondents have acted and continue to act under color of law.

74.    Respondents' seizure and detention of Petitioner constitutes an enforced disappearance. The United Nations General Assembly's Declaration on Protection of All Persons from Enforced Disappearance, G.A. Res. 47/133 (Dec. 18, 1992), provides that an enforced disappearance takes place when:

> [P]ersons are arrested, detained, or abducted against their will or otherwise deprived of their liberty by officials of different branches or levels of Government, or by organized groups, or private individuals acting on behalf of, or with the support, direct or indirect, consent or acquiescence of the Government, followed by a refusal to disclose the fate or whereabouts of the persons concerned or a refusal to acknowledge the deprivation of their liberty, which places such persons outside the protection of the law.

75.    The enforced disappearance of Petitioner is a tort committed in violation of the law of nations, in that it violates customary international law prohibiting enforced disappearances as reflected, expressed and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities. The enforced disappearance of Petitioner is also a tort in violation of treaties of the United States.

76.    The acts described herein have been, and continue to be, inflicted deliberately and intentionally.

77.    Respondents are liable for the acts described herein because they have directly or indirectly directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts.

78.    Petitioner has been deprived of his freedom, separated from his family and forced to suffer severe physical and psychological abuse.

79.    Accordingly, Petitioner is entitled to a Writ of Habeas Corpus, a declaratory judgment holding that his detention by Respondents is a tort committed in violation of the law of nations and/or treaties of the United States, and any other relief that this Court may deem appropriate.

## Count V – Alien Tort Claim: Arbitrary Arrest And Prolonged Arbitrary Detention

80.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

81.    Petitioner is in custody under or by color of the authority of the United States.  Respondents have taken Petitioner into custody and continue to detain him virtually *incommunicado* based solely upon their prerogative.

82.    Respondents have acted and continue to act under color of law.

83.    The acts described herein constitute a tort committed in violation of the law of nations, in that these acts violate customary international law prohibiting arbitrary arrest and detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

84.    The acts described herein also constitute a tort committed in violation of treaties of the United States.

85.    The acts described herein have been, and continue to be, inflicted deliberately and intentionally.

86.     Respondents are liable for the acts described herein because they have directly or indirectly directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts.

87.     Petitioner has been deprived of his freedom, separated from his family and forced to suffer severe physical and psychological abuse.

88.     Accordingly, Petitioner is entitled to a Writ of Habeas Corpus, a declaratory judgment holding that his detention by Respondents constitutes a tort committed in violation of the law of nations and/or treaties of the United States, and any other relief that this Court may deem appropriate.

**B.     Unlawful Treatment Of Petitioner.**

**Count VI – Violations Of The United States Constitution And Common Law**

89.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

90.     Petitioner is in custody under or by color of the authority of the United States. During this custody, he has not been afforded any procedures that would satisfy his rights under the most fundamental notions of due process under the Constitution of the United States, the laws and treaties of the United States and/or at common law. For example, Respondents have deprived, and continue to deprive, Petitioner of fundamental rights of due process, both under the Fifth Amendment to the United States Constitution and at common law, including but not limited to: (a) not being adequately informed of his legal rights; (b) not being informed of the legal and factual basis for his detention; and (c) not being provided with the means to contact or secure counsel to challenge his detention and/or conditions of detention.

22

91.      Respondents have detained and intend to continue detaining Petitioner indefinitely based solely upon their prerogative, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution and common law principles of due process.

92.      Respondents intend to intrude upon Petitioner's right to consult with counsel by conditioning counsel's access to Petitioner upon unreasonable terms, including classification and declassification procedures, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States, the right to assistance of counsel provided by the Sixth Amendment to the Constitution of the United States and common law principles of due process, which encompass the attorney-client privilege and the attorney work product doctrine.

93.      Accordingly, Petitioner is entitled to a Writ of Habeas Corpus and a declaratory judgment holding his detention by Respondents to be in violation of both the Constitution of the United States and common law principles of due process.

94.      Petitioner also is entitled to an injunction ordering Respondents to: (a) permit counsel to meet and confer with Petitioner in private and engage in unmonitored attorney-client conversations; and (b) cease all interrogations, both direct and indirect, of Petitioner while this litigation is pending.

95.      As demonstrated herein, such injunctive relief is appropriate because there is no adequate remedy at law and: (a) Petitioner will suffer irreparable harm if the relief is denied; (b) Respondents will suffer no harm if the relief is granted; (c) Petitioner is likely to succeed on the merits of this claim; and (d) there is a clear public interest in favor of granting the relief.

96.     Finally, Petitioner is entitled to any other relief that this Court may deem appropriate.

### Count VII – Violation Of Administrative Procedures Act

97.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

98.     Petitioner is in custody under or by color of the authority of the United States.  Respondents have taken Petitioner into custody and continue to detain him virtually *incommunicado* based solely upon their prerogative.

99.     United States Army Regulation 190-8, at 1-6(g), provides that:

> Persons who have been determined by a competent tribunal
> not to be entitled to prisoner of war status may not be
> executed, imprisoned, or otherwise penalized without
> further proceedings to determine what acts they have
> committed and what penalty should be imposed.

100.    Respondents have refused to find Petitioner to be entitled to prisoner of war status.  Nevertheless, they have imprisoned Petitioner without according him any proceedings before a competent and lawful tribunal, and otherwise have denied Petitioner the process accorded to persons seized and detained by the United States Military in times of armed conflict as established by Army Regulation 190-8.

101.    Respondent's conduct as described herein is *ultra vires* and in violation of the Administrative Procedures Act, 5 U.S.C. § 706.

102.    Accordingly, Petitioner is entitled to a Writ of Habeas Corpus and a declaratory judgment holding his detention by Respondents to be in violation of the Administrative Procedures Act.

103.    Petitioner also is entitled to an injunction ordering Respondents to: (a) permit counsel to meet and confer with Petitioner in private and engage in unmonitored attorney-client conversations; and (b) cease all interrogations, both direct and indirect, of Petitioner while this litigation is pending.

104.    As demonstrated herein, such injunctive relief is appropriate because there is no adequate remedy at law and: (a) Petitioner will suffer irreparable harm if the relief is denied; (b) Respondents will suffer no harm if the relief is granted; (c) Petitioner is likely to succeed on the merits of this claim; and (d) there is a clear public interest in favor of granting the relief.

105.    Finally, Petitioner is entitled to any other relief that this Court may deem appropriate.

## Count VIII – Violation Of Geneva Conventions

106.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

107.    Petitioner is in custody under or by color of the authority of the United States. At no time since Respondents have taken custody of Petitioner have Respondents provided Petitioner with the process accorded to persons seized and detained by the United States Military in times of armed conflict and as established by specific provisions of the Third and Fourth Geneva Conventions.

108.    The Third and Fourth Geneva Conventions are part of the law of the United States.

109.    Respondents are liable for the conduct described herein because they have directly or indirectly facilitated, ordered, acquiesced, confirmed, ratified and/or conspired to violate the Third and Fourth Geneva Conventions.

110.    Accordingly, Petitioner is entitled to a Writ of Habeas Corpus and a declaratory judgment holding his detention by Respondents to be in violation of the Geneva Conventions.

111.    Petitioner also is entitled to an injunction ordering Respondents to: (a) permit counsel to meet and confer with Petitioner in private and engage in unmonitored attorney-client conversations; and (b) cease all interrogations, both direct and indirect, of Petitioner while this litigation is pending.

112.    As demonstrated herein, such injunctive relief is appropriate because there is no adequate remedy at law and: (a) Petitioner will suffer irreparable harm if the relief is denied; (b) Respondents will suffer no harm if the relief is granted; (c) Petitioner is likely to succeed on the merits of this claim; and (d) there is a clear public interest in favor of granting the relief.

113.    Finally, Petitioner is entitled to any other relief that this Court may deem appropriate.

### Count IX – Violation Of Customary International Law

114.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

115.    Petitioner is in custody under or by color of the authority of the United States.  Respondents have denied and continue to deny Petitioner the process due to

persons seized and detained by the United States Military in times of armed conflict and as established by customary international law.

116.    This customary international law is part of the law of the United States.

117.    Respondents are liable for the conduct described herein because they have directly or indirectly facilitated, ordered, acquiesced, confirmed, ratified and/or conspired to violate customary international law.

118.    Accordingly, Petitioner is entitled to a Writ of Habeas Corpus and a declaratory judgment holding his detention by Respondents to be in violation of customary international law.

119.    Petitioner also is entitled to an injunction ordering Respondents to: (a) permit counsel to meet and confer with Petitioner in private and engage in unmonitored attorney-client conversations; and (b) cease all interrogations, both direct and indirect, of Petitioner while this litigation is pending.

120.    As demonstrated herein, such injunctive relief is appropriate because there is no adequate remedy at law and: (a) Petitioner will suffer irreparable harm if the relief is denied; (b) Respondents will suffer no harm if the relief is granted; (c) Petitioner is likely to succeed on the merits of this claim; and (d) there is a clear public interest in favor of granting the relief.

121.    Finally, Petitioner is entitled to any other relief that this Court may deem appropriate.

### Count X – Alien Tort Claim: Torture

122.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

123.    Petitioner is in custody under or by color of the authority of the United States.

124.    Based upon the statements and documents of the Government and reports by international humanitarian organizations detailed above, there is a good faith reason to believe that Petitioner has been subjected to ongoing physical and psychological abuse since being taken into custody by Respondents.

125.    Any such physical and psychological abuse has been and continues to be conducted under color of law.

126.    Any such physical and psychological abuse constitutes a tort committed in violation of the law of nations in that it violates customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

127.    Any such physical and psychological abuse also constitutes a tort committed in violation of treaties of the United States.

128.    Any such physical and psychological abuse has been, and continues to be, inflicted deliberately and intentionally for purposes that include punishing or intimidating Petitioner.

129.    Respondents are liable for any such physical and psychological abuse because they have directly or indirectly directed, ordered, confirmed, ratified, and/or conspired together and with others to commit any such physical and psychological abuse.

130.    Petitioner has been forced to suffer any such physical and psychological abuse as a result of Respondents' conduct.

131.    Accordingly, Petitioner is entitled to a Writ of Habeas Corpus.

132.    Petitioner also is entitled to an injunction ordering Respondents to: (a) permit counsel to meet and confer with Petitioner in private and engage in unmonitored attorney-client conversations; (b) cease any interrogations, both direct and indirect, of Petitioner while this litigation is pending; and (c) cease any acts of torture against, and/or cruel, inhuman or degrading treatment of, Petitioner.

133.    As demonstrated herein, such injunctive relief is appropriate because there is no adequate remedy at law: (a) Petitioner will suffer irreparable harm if the relief is denied; (b) Respondents will suffer no harm if the relief is granted; (c) Petitioner is likely to succeed on the merits of this claim; and (d) there is a clear public interest in favor of granting the relief.

134.    Finally, Petitioner is entitled to any other relief that this Court may deem appropriate.

### Count XI – Alien Tort Claim: Crimes Against Humanity

135.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

136.    Petitioner is in custody under or by color of the authority of the United States.

137.    Based upon the statements and documents of the Government and reports by international humanitarian organizations detailed above, there is a good faith reason to believe that Petitioner has been subjected to ongoing physical and psychological abuse since being taken into custody by Respondents .

138.    Any such physical and psychological abuse has been and continues to be conducted under color of law.

139.    Any such physical and psychological abuse constitutes a tort committed in violation of the law of nations in that it violates, *inter alia*: (a) the Fourth Geneva Convention; (b) Common Article III of the Geneva Conventions; (c) Additional Protocols I and II of the General Conventions; and (d) customary international law prohibiting crimes against humanity as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

140.    Any such physical and psychological abuse also constitutes a tort committed in violation of treaties of the United States.

141.    Any such physical and psychological abuse has been, and continues to be, inflicted deliberately and intentionally for purposes that include punishing or intimidating Petitioner.

142.    Respondents are liable for any such physical and psychological abuse because they have directly or indirectly directed, ordered, confirmed, ratified, and/or conspired together and with others to commit any such physical and psychological abuse.

143.    Petitioner has been forced to suffer any such physical and psychological abuse as a result of Respondents' conduct.

144.    Accordingly, Petitioner is entitled to a Writ of Habeas Corpus.

145.    Petitioner also is entitled to an injunction ordering Respondents to: (a) permit counsel to meet and confer with Petitioner in private and engage in unmonitored attorney-client conversations; (b) cease all interrogations, both direct and indirect, of Petitioner while this litigation is pending; and (c) cease any acts of torture against, and/or any cruel, inhuman or degrading treatment of, Petitioner.

146.    As demonstrated herein, such injunctive relief is appropriate because there is no adequate remedy at law and: (a) Petitioner will suffer irreparable harm if the relief is denied; (b) Respondents will suffer no harm if the relief is granted; (c) Petitioner is likely to succeed on the merits of this claim; and (d) there is a clear public interest in favor of granting the relief.

147.    Finally, Petitioner is entitled to any other relief that this Court may deem appropriate.

### Count XII – Alien Tort Claim: Cruel, Inhuman Or Degrading Treatment

148.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

149.    Petitioner is in custody under or by color of the authority of the United States.

150.    Based upon the statements and documents of the Government and reports by international humanitarian organizations detailed above, there is a good faith reason to believe that Petitioner has been subjected to ongoing physical and psychological abuse since being taken into custody by Respondents.

151.    Any such physical and psychological abuse has been and continues to be conducted under color of law.

152.    Any such physical and psychological abuse constitutes a tort committed in violation of the law of nations in it violates customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

31

153.    Any physical and psychological abuse also constitutes a tort committed in violation of treaties of the United States.

154.    Any such physical and psychological abuse has been, and continues to be, inflicted deliberately and intentionally for purposes that include punishing or intimidating Petitioner.

155.    Respondents are liable for any such physical and psychological abuse because they have directly or indirectly directed, ordered, confirmed, ratified, and/or conspired together and with others to commit any such physical and psychological abuse.

156.    Petitioner has been forced to suffer any such physical and psychological abuse as a result of Respondents' conduct.

157.    Accordingly, Petitioner is entitled to a Writ of Habeas Corpus.

158.    Petitioner also is entitled to an injunction ordering Respondents to: (a) permit counsel to meet and confer with Petitioner in private and engage in unmonitored attorney-client conversations; (b) cease all interrogations, both direct and indirect, of Petitioner while this litigation is pending; and (c) cease any acts of torture against, and/or cruel, inhuman or degrading treatment of, Petitioner.

159.    As demonstrated herein, such injunctive relief is appropriate because there is no adequate remedy at law and: (a) Petitioner will suffer irreparable harm if the relief is denied; (b) Respondents will suffer no harm if the relief is granted; (c) Petitioner is likely to succeed on the merits of this claim; and (d) there is a clear public interest in favor of granting the relief.

160.    Finally, Petitioner is entitled to any other relief that this Court may deem appropriate.

### Count XIII – Violation Of Administrative Procedures Act

161.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

162.    Petitioner is in custody under or by color of the authority of the United States.

163.    United States Army Regulation 190-8, at 1-6(g), provides that:

> Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.

164.    Respondents have refused to find Petitioner to be entitled to prisoner of war status.

165.    There is a good faith reason to believe that Respondents have penalized Petitioner without further proceedings to determine what acts he has committed and what penalty should be imposed.  In this regard, the statements and documents of the Government and reports by international humanitarian organizations detailed above provide a good faith basis for believing that Respondents have subjected, and continue to subject, Petitioner to physical and psychological abuse deliberately and intentionally for various purposes, including punishment of Petitioner.

166.    Any such conduct has been and continues to be under color of law.

167.    Respondents are liable for any such conduct because they have directly or indirectly directed, ordered, confirmed, ratified, and/or conspired together and with others to commit any such conduct.

168.    Any such conduct is *ultra vires* and in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706.

169.    Accordingly, Petitioner is entitled to a Writ of Habeas Corpus.

170.    Petitioner also is entitled to an injunction ordering Respondents to: (a) permit counsel to meet and confer with Petitioner in private and engage in unmonitored attorney-client conversations; (b) cease all interrogations, both direct and indirect, of Petitioner while this litigation is pending; and (c) cease any acts of torture against, and/or cruel, inhuman or degrading treatment of, Petitioner.

171.    As demonstrated herein, such injunctive relief is appropriate because there is no adequate remedy at law and: (a) Petitioner will suffer irreparable harm if the relief is denied; (b) Respondents will suffer no harm if the relief is granted; (c) Petitioner is likely to succeed on the merits of this claim; and (d) there is a clear public interest in favor of granting the relief.

172.    Finally, Petitioner is entitled to any other relief that this Court may deem appropriate.

## C.    Risk Of Extraordinary Rendition.

### Count XIV – Violation Of Due Process

173.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

174.    In light of the reports by the media and the United States Department of State detailed above, there is a good faith basis to believe that Petitioner faces a foreseeable and imminent risk of being transferred by Respondents, without lawful procedures, to a country that engages in torture, based upon the express condition that

Petitioner is imprisoned by that country. This situation creates, in turn, a foreseeable and imminent risk that Petitioner will be detained indefinitely and/or tortured should he be transferred.

175.    The anticipated transfer described herein constitutes a violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States and common law principles of due process.

176.    Accordingly, Petitioner is entitled to a Writ of Habeas Corpus.

177.    Petitioner also is entitled to an injunction ordering that he not be transferred or otherwise rendered to any country where there is a foreseeable and imminent risk that Petitioner will be subject to indefinite detention and/or torture. As demonstrated herein, such injunctive relief is appropriate because there is no adequate remedy at law and: (a) Petitioner will suffer irreparable harm if the relief is denied; (b) Respondents will suffer no harm if the relief is granted; (c) Petitioner is likely to succeed on the merits of this claim; and (d) there is a clear public interest in favor of granting the relief.

178.    Finally, Petitioner is entitled to any other relief that this Court may deem appropriate.

## Count XV – Violation Of International Conventions

179.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

180.    In light of the reports by the media and the United States Department of State detailed above, there is a good faith basis to believe that Petitioner faces a foreseeable and imminent risk of being transferred, without lawful procedures, to a

country that engages in torture, based upon the express condition that Petitioner is imprisoned by that country. This situation creates, in turn, a foreseeable and imminent risk that Petitioner will be detained indefinitely and/or tortured should he be transferred.

181.    The anticipated transfer described herein constitutes a violation of Petitioner's rights under the Convention Against Torture and the 1954 Convention Relating to the Status of Refugees. These conventions are part of the law of the United States.

182.    Accordingly, Petitioner is entitled to a Writ of Habeas Corpus.

183.    Petitioner also is entitled to an injunction ordering that he not be transferred or otherwise rendered to any country where there is a foreseeable and imminent risk that Petitioner will be subject to indefinite detention and/or torture. As demonstrated herein, such injunctive relief is appropriate because there is no adequate remedy at law and: (a) Petitioner will suffer irreparable harm if the relief is denied; (b) Respondents will suffer no harm if the relief is granted; (c) Petitioner is likely to succeed on the merits of this claim; and (d) there is a clear public interest in favor of granting the relief.

184.    Finally, Petitioner is entitled to any other relief that this Court may deem appropriate.

### Count XVI – Alien Tort Claim

185.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

186.    In light of the reports by the media and the United States Department of State detailed above, there is a good faith basis to believe that Petitioner faces a

foreseeable and immediate risk of being transferred by Respondents, without lawful procedures, to a country that engages in torture, based upon the express condition that Petitioner is imprisoned by that country. This situation creates, in turn, a foreseeable and imminent risk that Petitioner will be detained indefinitely and/or tortured should he be transferred.

187.    Any such transfer constitutes a tort, in violation of customary international law, which may be vindicated by the Alien Tort Claims Act, 28 U.S.C. § 1350.

188.    Accordingly, Petitioner is entitled to a Writ of Habeas Corpus.

189.    Petitioner also is entitled to an injunction ordering that he not be transferred or otherwise rendered to any country where there is a foreseeable and imminent risk that Petitioner will be subject to indefinite detention and/or torture. As demonstrated herein, such injunctive relief is appropriate because there is no adequate remedy at law and: (a) Petitioner will suffer irreparable harm if the relief is denied; (b) Respondents will suffer no harm if the relief is granted; (c) Petitioner is likely to succeed on the merits of this claim; and (d) there is a clear public interest in favor of granting the relief.

190.    Finally, Petitioner is entitled to any other relief that this Court may deem appropriate.

### PRAYER FOR RELIEF

WHEREFORE, Petitioner prays for this Court to:

1.    Grant a Writ of Habeas Corpus compelling Respondents to bring Petitioner before this Court to conduct proceedings to vindicate Petitioner's legal rights.

2.    Enter an injunction ordering Respondents:

(a)     To permit counsel to meet and confer with Petitioner in private and unmonitored attorney-client conversations;

(b)     To cease all interrogations of Petitioner, both direct and indirect, while this litigation is pending;

(c)     To cease any acts of torture against, and cruel, inhuman or degrading treatment, of Petitioner;

(d)     Not to transfer or render Petitioner to any other country without the specific, written agreement of Petitioner and Petitioner's counsel while this litigation is pending; and

(e)     Not to transfer or render Petitioner to any country where there is a foreseeable and imminent risk that Petitioner will be subject to indefinite detention and/or torture.

3.     Enter a declaratory judgment holding that Petitioner is not, nor has he ever been, an individual subject to the Military Order, or an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the Government, including but not limited to the definition of "enemy combatant" set forth in the Deputy Secretary's Order.

4.     Enter a declaratory judgment holding that the Military Order, both on its face and/or as applied to Petitioner, is in violation of:

(a)     The War Powers Clause of the Constitution of the United States;

(b)     Article II of the Constitution of the United States;

(c)     The Fifth Amendment to the Constitution of the United States;

(d)     The Administrative Procedures Act, 5 U.S.C. § 702;

    (e)      Treaties of the United States, including but not limited to the Third and Fourth Geneva Conventions;

    (f)      The Uniform Code of Military Justice; and/or

    (g)      Customary international law.

5.      Enter a declaratory judgment holding that Respondents' detention of Petitioner is arbitrary, unlawful and a deprivation of liberty in violation of:

    (a)      The Due Process Clause of the Fifth Amendment to the Constitution of the United States;

    (b)      Common law principles of due process;

    (c)      Regulations of the United States Military;

    (d)      Treaties of the United States, including but not limited to the Third and Fourth Geneva Conventions; and/or

    (e)      Customary international law.

6.      Enter a declaratory judgment holding that Respondents' detention of Petitioner is a tort committed in violation of the law of nations and/or treaties of the United States.

7.      Order that Petitioner be released from Respondents' custody;

8.      If deemed necessary, designate Ahmed Mohammed Hassin Al Rammah next friend of Petitioner for purposes of this litigation; and

9.      Order any such other relief as this Court may deem necessary and appropriate.

Date:   July 20, 2006

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

_____
Panayiota G. Souras (Pursuant to LCvR 83.2(g))

Washington Harbour
3050 K Street, N.W., Suite 200
Washington, D.C. 20007
(202) 339-8400
(202) 339-8500 (fax)

Counsel for Petitioner

*Of Counsel:*

Barbara Olshansky
Gitanjali S. Gutierrez
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

## **VERIFICATION**

Pursuant to 28 U.S.C. §§ 1746 and 2242, I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of July, 2006.

Panayiota G. Souras